## IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In Re:  **LEWIS M. IRVING,**                     :     **CHAPTER 11**

       **Debtor**                              : **BANKRUPTCY NO. 19-13930**


## ORDER SUR DEBTOR'S OBJECTIONS TO PROOF OF CLAIM FILED BY LSC19, LLC ("LSC")

AND NOW, this          day of October, 2019, it is hereby ORDERED as follows:

1. The Objections are SUSTAINED.

2.. The Proof of Claim filed by LSC is REDUCED to $_____.


_____

J.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA**

In Re: **LEWIS M. IRVING,**                    :      **CHAPTER 11**

        **Debtor**                            : **BANKRUPTCY NO. 19-13930**

**DEBTOR'S OBJECTIONS TO PROOF OF CLAIM NO. 4-1 ("the POC") FILED LSC19,
LLC ("LSC")**

The Debtor now comes and makes the following Objections ("the

Objections") to the POC filed in this case by the LSC (No. 7-1):

1. A copy of the POC filed by LSC (No. 9) filed on August 6, 2019, and claiming

a total of $1,363,872.58 is attached as an Exhibit hereto.

2. It was alleged in the POC that it is based upon a "Final Judgment" in the

amount of $1,079,799.94 of which the date is March 31, 2016.

3. The Debtor questions and disputes the circumstances under which this

judgment was entered.  He does not believe that it occurred in the ordinary course.

4. The judgment appears to include an amount for a Line of Credit in the amount

of $100,000 which was never drawn on or used by the Debtor and therefore the Debtor's

obligations are overstated.

5. As evidence of the questionable nature of this judgment, the predecessor of

LSC, The Bancorp Bank ("Bancorp"), was willing to accept a reduced payment amount of

$276,807 as a total payoff of this obligation as recently as August 8, 2018.

6. Thereafter, Bancorp allegedly transferred this obligation to LSC for some

undisclosed amount, which the Debtor believes was less than $276,807.  The Debtor would like

to know what the consideration was for this transfer.

7. The principal security for this obligation is the only remaining Black

decedents' ground in the vicinity of Chester, PA. The cemetery grounds are about three-quarters full, and the graves have been sold to the decedents in the cemetery or their families. The Debtor disputes whether this cemetery land can be the subject of a valid execution under the circumstances. Also on this ground is a crematorium, and it is unclear whether this building also can be the subject of a valid execution sale.

7. When all of these circumstances are considered, it behooves LSC to attempt to work with the Debtor to attempt to resolve its claim at some amount and on some payment terms which are feasible for the Debtor to pay.

8. The Debtor is an 80-year-old individual with significant health problems. Most of his assets are encumbered and consist of little equity which can generate a considerable financial amount,

9. The Debtor believes that, under the circumstances, a reasonable settlement of the amount due and the periodic payments to be made on this obligation would be appropriate.

WHEREFORE, the Debtor requests that this court will enter the Proposed Order accompanying the Objections.

/s/DAVID A. SCHOLL
512 Hoffman Street
Philadelphia, PA.  19148
610-550-1765
Attorney for Debtor

Fill in this information to identify the case:

Debtor 1    Lewis M. Irving

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Eastern District of Pennsylvania

Case number   19-13930-amc

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | LSC19, LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor   The Bancorp Bank (assignor) |
| --- | --- |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes.  From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Dan Will
Name

13949 Ventura Blvd., Suite 300
Number       Street

Sherman Oaks        CA        91423
City                        State        ZIP Code

Contact phone  (818)922-2200

Contact email  dwill@lscapital.com

**Where should payments to the creditor be sent? (if different)**

Name

Number       Street

City                        State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___  ___  ___  ___  ___  ___  ___  ___  ___  ___  ___

| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ____/____/____ <br> MM / DD / YYYY |
| --- | --- |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __3__ __6__ __5__ __4__ |

| | |
|---|---|
| 7. How much is the claim? | $ _____1,363,872.58____. Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Judgment |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes.   The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**   Recorded mortgage/UCC<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ Unknown<br>**Amount of the claim that is secured:**   $ Unknown<br>**Amount of the claim that is unsecured:** $ Unknown   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ 1,363,872.58<br><br>**Annual Interest Rate** (when case was filed)   6.00 %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No |  |
|---|---|---|
|  | ☐ Yes. Check one: | **Amount entitled to priority** |
|  | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
|  | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
|  | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
|  | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
|  | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
|  | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
|  | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   8 / 2 / 2019
                   MM / DD / YYYY

_Signature_

**Print the name of the person who is completing and signing this claim:**

| Name | Aric | | Lasky |
|---|---|---|---|
|  | First name | Middle name | Last name |
| Title | Manager | | |
| Company | LSC19, LLC | | |
|  | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 13949 Ventura Blvd., Suite 300 | | |
|  | Number     Street | | |
|  | Sherman Oaks | CA | 91423 |
|  | City | State | ZIP Code |
| Contact phone | (818)922-2200 | Email | alasky@lscapital.com |

**<u>Addendum to Proof of Claim of LSC19, LLC ("Claimant"),<br>as successor in interest to The Bancorp Bank (the "Bank")</u>**

1.    Supporting documents for this proof of claim are attached as follows:

       <u>Exhibit A</u>:  Judgment and Assignment of Judgment

       <u>Exhibit B</u>:  First Mortgage on 2500 Concord Road, Chester Township, PA and Assignment of Mortgage

       <u>Exhibit C</u>:  Second Mortgage on 2500 Concord Road, Chester Township, PA and Assignment of Mortgage

       <u>Exhibit D</u>:  Judgment Legal Balance.  In addition, Claimant and/or the Bank have incurred $207,108.88 in post-judgment attorneys' fees and costs which are included in the proof of claim.

2.    Claimant reserves the right to amend this proof of claim or to file additional proofs of claim that relate back to the date of filing hereof.

12559923 v1

**<u>Addendum to Proof of Claim of LSC19, LLC ("Claimant"),</u>**
**<u>as successor in interest to The Bancorp Bank (the "Bank")</u>**

1.      Supporting documents for this proof of claim are attached as follows:

>   <u>Exhibit A</u>:  Judgment and Assignment of Judgment
>
>   <u>Exhibit B</u>:  First Mortgage on 2500 Concord Road, Chester Township, PA
>   and Assignment of Mortgage
>
>   <u>Exhibit C</u>:  Second Mortgage on 2500 Concord Road, Chester Township,
>   PA and Assignment of Mortgage
>
>   <u>Exhibit D</u>:  Judgment Legal Balance.  In addition, Claimant and/or the
>   Bank have incurred $207,103.88 in post-judgment attorneys' fees and
>   costs which are included in the proof of claim.

2.      Claimant reserves the right to amend this proof of claim or to file additional
proofs of claim that relate back to the date of filing hereof.

# Exhibit A

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

OFFICE OF JUDICIAL SUPPORT

RULE OF CIVIL PROCEDURE NO. 236

BANCORP BANK

vs.                                              No. 2013-009899                    :

LEWIS IRVING /AKA

NOTICE IS GIVEN UNDER PENNSYLVANIA RULE OF CIVIL PROCEDURE NO. 236 THAT A
VERDICT IN THE ABOVE CASE HAS BEEN ENTERED ON October 15, 2015.

SIGNED   October 13, 2015

PER      Christine Fizzano Cannon, J.

MARK A SCHIAVO 2013-009899
457 HADDONFIELD ROAD
SUITE 700
CHERRY HILL, NEW JERSEY 08002

**TIME AND LEGAL LIABILITY DO NOT PERMIT THE OFFICE OF JUDICIAL
SUPPORT TO GIVE DOCKET INFORMATION BY TELEPHONE.
NO EXCEPTIONS!**

PUBLIC ACCESS INFORMATION: www.co.delaware.pa.us

RECEIVED OCT 2 2 2015

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| **THE BANCORP BANK** | : NO. 13-009899 |
| | : |
| **v.** | : |
| | : |
| **LEWIS M. IRVING, a/k/a** | : |
| **LEWIS M. IRVING, SR., a/k/a** | : |
| **LEWIS MACEO IRVING, SR.** | : |

### ORDER/VERDICT

AND NOW, this 13th day of October, 2015, after a non-jury trial, it is hereby ORDERED and DECREED as follows:

1. Defense Exhibit D-2 is admitted.

2. Judgment is entered in favor of Plaintiff, The Bancorp Bank, and against Defendant, Lewis M. Irving, a/k/a Lewis M. Irving, Sr., a/k/a Lewis Maceo Irving, Sr., in the amount of nine hundred eight thousand six hundred twenty-three dollars and fifty-eight cents ($908,623.58), as of July 6, 2015, plus other costs and charges collectible under the mortgage, for foreclosure and sale of the mortgaged property.

3. Judgment is entered in favor of Plaintiff, The Bancorp Bank, and against Defendant, Lewis M. Irving, a/k/a Lewis M. Irving, Sr., a/k/a Lewis Maceo Irving, Sr., for attorney's fees in the amount of one hundred seventy-one thousand one hundred seventy-six dollars and thirty-six cents ($171,176.36) (thirteen thousand eight hundred ten dollars ($13,810.00) of the bill of Imperatrice, Amarant & Bell, P.C.

and one hundred fifty-seven thousand three hundred sixty-six dollars
and thirty-six cents ($157,366.36) of the bill of Dilworth Paxson, LLP).

4.  Plaintiff's Motion to Enforce Settlement Agreement shall be marked as
withdrawn.

BY THE COURT:



CHRISTINE FIZZANO CANNON, J.

FILED JM
2015 OCT 15 PM 9:22
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA.

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
Michael J. Barrie, Esquire (85625)
John C. Gentile, Esquire (322159)
1650 Market Street, 36th Floor
Philadelphia, PA  19103-7301
(267) 207-2947 (Telephone)
(267) 207-2949 (Facsimile)                          *Attorneys for Plaintiff-Assignee LSC19,
                                                    LLC*

|  |  |  |
|---|---|---|
| THE BANCORP BANK, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff | : |  |
|  | : | Case No. 2013-9899 |
|  | : |  |
| v. | : |  |
|  | : |  |
| LEWIS M. IRVING, a/k/a LEWIS M. IRVING, | : |  |
| SR., a/k/a LEWIS MACEO IRVING, SR. | : |  |
|  | : |  |
| Defendant. | : |  |

### PRAECIPE TO MARK JUDGMENT TO USE OF ASSIGNEE LSC19, LLC

TO THE PROTHONOTARY:

In accordance with the instrument (a copy of which is attached as Exhibit "A" hereto)
executed by the Plaintiff, The Bancorp Bank, to effectuate the assignment of the above-referenced
judgment (and writ of execution issued thereon), please mark the judgment entered in the above-
captioned matter (for the Plaintiff, The Bancorp Bank, against the Defendant Lewis M. Irving,
a/k/a Lewis M. Irving Sr., a/k/a Lewis Maceo Irving, Sr., in the amount of $1,079,799.94, plus
interest accruing thereon, costs, and attorneys' fees) to the use of LSC19, LLC (the "Assignee"),
having an address c/o Michael J. Barrie, Esquire, and John C. Gentile, Esquire, Benesch,
Friedlander, Coplan & Aronoff, LLP, 1650 Market Street, Suite 3628, Philadelphia, PA 19103.

12422854

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

Dated: June 18, 2019

/s/ *Michael J. Barrie*
Michael J. Barrie (Pa. I.D. No. 85625)
John C. Gentile (Pa. I.D. No. 322159)
One Liberty Place
1650 Market Street
Philadelphia PA 19103
(267) 207-2947

*Attorneys for Plaintiff–Assignee, LSC19, LLC*

2

## CERTIFICATE OF SERVICE

I, Michael J. Barrie, hereby certify that on June 18, 2019 I served a true and correct copy

of the foregoing *Praecipe to Mark Judgment for Use of Assignee LSC19, LLC* upon all counsel of

record via the Court's electronic filing system.

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

Dated:  June 18, 2019

*/s/ Michael J. Barrie*
Michael J. Barrie (Pa. I.D. No. 85625)
John C. Gentile (Pa. I.D. No. 322159)
One Liberty Place
1650 Market Street
Philadelphia PA 19103
(267) 207-2947

*Attorneys for Plaintiff–Assignee, LSC19, LLC*

# EXHIBIT A

# Exhibit A

## ASSIGNMENT OF JUDGMENT

For valuable consideration in hand paid, the receipt and adequacy of which are hereby acknowledged, The Bancorp Bank ("**Assignor**"), does hereby sell, quitclaim, transfer, assign, and set over unto LSC19, LLC, ("**Assignee**"), all of Assignor's right, title and interest in and to the judgment described on Schedule 1 attached hereto (the "**Judgment**").

**THIS ASSIGNMENT IS MADE BY ASSIGNOR WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER BY ASSIGNOR, OTHER THAN THE SPECIFIC REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 8 OF THAT CERTAIN AGREEMENT FOR SALE AND PURCHASE OF LOAN DATED AS OF JUNE 13, 2019 BY AND BETWEEN ASSIGNOR AND ASSIGNEE (the "Loan Sale Agreement").**

Assignee shall have all of the Assignor's right, title and interest in and to the Judgment, the right to collect or receive the monies due under the Judgment, and any part thereof, or to release or discharge the Judgment.

This Assignment is being delivered by the Assignor to the Assignee in accordance with and subject to the terms of the Loan Sale Agreement to effect the assignment of the Judgment contemplated thereby.  To the extent that there is any conflict between the terms of this Assignment and the terms of the Loan Sale Agreement, it is intended that the terms of the Loan Sale Agreement shall govern.

### (REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

120956027_1

IN WITNESS WHEREOF, Assignor caused this Assignment of Judgment to be executed as a document under seal as of June 13, 2019.

THE BANCORP BANK

By: _____

Daniel T. Sacho, Executive Vice President

STATE OF ~~DELAWARE~~ Pennsylvania   )
                                      : ss.
COUNTY OF ~~WILMINGTON~~ Philadelphia  )

On the 13th day of June 2019, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Daniel T. Sacho, who acknowledged himself to be the Executive Vice President of The Bancorp Bank, and, being duly authorized to do so, executed the forgoing instrument on behalf of The Bancorp Bank, as such officer.

WITNESS my hand and seal the day and year first above written.

_____

Notary Public
My Commission Expires:

Commonwealth of Pennsylvania - Notary Seal
Sharon L. Morris, Notary Public
Philadelphia County
My commission expires July 26, 2022
Commission number 1115927
Member, Pennsylvania Association of Notaries

120956027_1

## SCHEDULE 1

### JUDGMENT

| | |
|---|---|
| Civil Action Case No.: | 13-9899 |
| Venue: | Court of Common Pleas<br>Delaware County, Pennsylvania, Civil Division<br>(Mortgage Foreclosure) |
| Style of Civil Action: | The Bancorp Bank vs. Lewis M. Irving, a/k/a Lewis M. Irving, Sr., a/k/a Lewis Maceo Irving, Sr. |
| Date of Judgment: | October 13, 2015 |
| Amount of Judgment: | $1,079,799.94 |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provision of the *Public Access Policy of the United States Judicial System of Pennsylvania: Case Records of the Appellate and Trial Court* that require filing confidential information and documents differently than non-confidential information and documents.

**DILWORTH PAXSON, LLP**
Mark A. Schiavo, Esquire (PA ID #87879)
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002
Tel: 856-675-1900

**IMPERATRICE, AMARANT & BELL, P.C.**
Rocco P. Imperatrice, III, Esquire (PA ID #32181)
Kathleen O'Connell Bell, Esquire (PA ID# 88702)
3405 West Chester Pike
Newtown Square, PA 19073
Attorneys for Plaintiff

Dated:  June 13, 2019

120956027_1

# Exhibit B

Parcel Identification
Number:
07-00-00256-00

RECORDATION
REQUESTED BY:
The Bancorp Bank
Philadelphia Private Bank
405 Silverside Road
Wilmington, DE  19809

WHEN RECORDED MAIL
TO:
The Bancorp Bank
Philadelphia Private Bank
405 Silverside Road
Wilmington, DE  19809

SEND TAX NOTICES TO:
Lewis M. Irving, Sr. a/k/a
Lewis Maceo Irving, Sr.; B.
Vivian Irving a/k/a Bernice
V. Irving; and Michael L.
Irving
278 Thornton Road
Thornton, PA  19373

RD BK03864-0054                                BG-MORTGAGE
2006069679    07/27/2006 12:07:01 PM:2
RCD FEE: $95.00

THOMAS J. JUDGE SR. ROD            DELAWARE
                                   COUNTY

RECORD AND RETURN TO
KEYSTONE SETTLEMENT SERVICES
1100 North Providence Road Suite 107
Media, PA  19063
610-565-0209

FOR RECORDER'S USE ONLY

# OPEN - END MORTGAGE
## THIS MORTGAGE SECURES FUTURE ADVANCES
## THIS IS A PURCHASE MONEY MORTGAGE

**MAXIMUM LIEN.** The unpaid principal balance of advances exclusive of interest and unpaid balances of advances and other extensions of credit, secured by the Mortgage made for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred for the protection of the mortgaged premises shall not exceed at any one time $1,700,000.00.

**Amount Secured Hereby:    $850,000.00**

**THIS MORTGAGE** dated December 28, 2005, is made and executed between Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr., whose address is 278 Thornton Road, Thornton, PA  19373; B. Vivian Irving a/k/a Bernice V. Irving, whose address is 278 Thornton Road, Thornton, PA 19373 and Michael L. Irving, whose address is 62 Mill Road, Thornton, PA  19373 (referred to below as "Grantor") and The Bancorp Bank, whose address is 405 Silverside Road, Wilmington, DE  19809 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Delaware County, Commonwealth of Pennsylvania:

See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

**The Real Property** or its address is commonly known as  2500 Concord Road, Chester Township, PA  19013.  The Real Property parcel identification number is 07-00-00256-00.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the

(i)

Policy No. 452273                       ~~SCHEDULE "A"~~                       Title No.  2005-452273

Exhibit "A"

**LEGAL DESCRIPTION**

ALL THAT CERTAIN lot, piece or parcel of land with the buildings and improvements thereon, SITUATE, lying and being in the Township of Chester, County of Delaware and State of Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point in the center line of Concord Road (80 feet wide) as re-established, and in the center of the Philadelphia and Baltimore Railroad, and at a corner of other lands of the said John A. Trosino; extending thence by the center line of the said Concord Road, North 43 degrees 12 minutes 10 seconds West, 785.06 feet to a point in the bed of the said re-established Road and in the original center line of the same; thence along said original center line, North 23 degrees 23 minutes West, 81.2 feet to a point; thence leaving said road and passing land lands occupied by and known as the Carter Cemetery along and by the Southeasterly face of stone wall, North 65 degrees 48 minutes and 12 seconds East, 111.2 feet to a point at a corner; thence still by said lands and along the Northeasterly face of said wall, North 22 degrees 36 minutes 13 seconds West, 52.7 feet to a point in line of lands now or formerly of Anthony Linaki and wife; thence by the last mentioned lands, North 65 degrees 48 minutes 12 seconds East, 743 feet to a stone in an angle in line of lands of Howard A. Miller; thence by the last mentioned lands, South 38 degrees 48 minutes 5 seconds East, 994.06 feet to a stone at an angle; thence still by the last mentioned lands, South 19 degrees 28 minutes 27 seconds East, 278.48 feet to a point in the center line of the said Philadelphia and Baltimore Railroad at a corner of said other lands of John A. Trosino; thence by the last mentioned lands and along the center line of said Railroad, South 89 degrees 17 minutes 50 seconds West, 720.52 feet to the center line of said re-established Concord Road, the point and place of beginning.

CONTAINING 20.2175 acres of land, more or less, inclusive to the center line of Railroad and Concord Road.

Being Folio #07-00-00256-00

Being the same premises which Lewis M. Irving aka Lewis Maceo Irving Sr. a/k/a Lewis M. Irving Sr. by Deed dated March 3, 2000 and recorded March 30, 2000 in Delaware County in Vol 1996 Page 1797 conveyed unto Lewis M. Irving, Sr. and B. Vivian Irving, husband and wife 76% interest and Michael Lewis Irving 24% interest as tenants in common to Lewis M. Irving Sr. and B. Vivian Irving, husband and wife, in fee.

Being the same premises which Lewis M. Irving a/k/a Lewis Maceo Irving, Sr. by Deed dated March 4, 2000 and recorded March 30, 2000 in Delaware County in Vol 1996 Page 1800 conveyed unto Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving Sr. and Michael L. Irving, his son, in fee.

(2)

Loan No: 139008162                  **MORTGAGE**
                                    (Continued)                              Page 3 

Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $850,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PURCHASE MONEY MORTGAGE.** If any of the debt secured by this Mortgage is lent to Borrower to acquire title to the Real Property, this Mortgage shall be a purchase money mortgage under 42 P.S. Section 8141.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

  **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

  **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the indebtedness and the satisfaction and reconveyance of

**Loan No: 139008162**

## MORTGAGE
### (Continued)

Page 4

the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this

Loan No: 139008162

## MORGAGE
## (Continued)

Page 4

**Mortgage:**

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Loan No: 139008162**

**MORTGAGE**
**(Continued)**

Page 6

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices

**MORTGAGE**
**(Continued)**

Loan No: 139008162

Page 8

and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the

**Loan No: 139008182**

## MORTGAGE
## (Continued)

Page 8

prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to

**Loan No: 139008162**

**MORTGAGE**
**(Continued)**

Page 8 

Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Lender may also recover from Grantor all court, alternative dispute resolution or other collection costs (including, without limitation, fees and charges of collection agencies) actually incurred by Lender.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Delaware without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Delaware.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of New Castle County, State of Delaware.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and

**MORTGAGE**
**(Continued)**

Loan No: 139008162

Page 9

Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successor Interests.** The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr.; and B. Vivian Irving a/k/a Bernice V. Irving and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr.; B. Vivian Irving a/k/a Bernice V. Irving; and Michael L. Irving.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under

**Loan No: 139008162**

## MORTGAGE
### (Continued)

Page 10

this Mortgage, together with interest on such amounts as provided in this Mortgage. The liens and security interests created pursuant to this Mortgage covering the Indebtedness which may be created in the future shall relate back to the date of this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Mortgage, together with all interest thereon.

**Lender.** The word "Lender" means The Bancorp Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 28, 2005, **in the original principal amount of $850,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr.

X _____ (Seal)
B. Vivian Irving a/k/a Bernice V. Irving

X _____ (Seal)
Michael L. Irving

Loan No: 139008162

**MORTGAGE**
**(Continued)**

Page 12

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, The Bancorp Bank, herein is as follows:

Philadelphia Private Bank, 405 Silverside Road, Wilmington, DE 19809

Attorney or Agent for Mortgagee

---

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA            )
                                        ) SS
COUNTY OF    DELAWARE                    )

On this, the  28th  day of  Dec. , 20 05 , before me
Richard T. Paules, the undersigned Notary Public, personally appeared Lewis M. Irving, Sr. a/k/a
Lewis Maceo Irving, Sr.; B. Vivian Irving a/k/a Bernice V. Irving; and Michael L. Irving, known to me (or satisfactorily
proven) to be the person whose names are subscribed to the within instrument, and acknowledged that they executed
the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Notary Public in and for the State of  PA.

County of Delaware

| Notarial Seal |
| Richard T Paules, Notary Public |
| Upper Providence Twp. Delaware County |
| My Commission Expires Oct. 10, 2006 |

Member, Pennsylvania Association of Notaries

LASER PRO Lending, Ver. 5.28.00.006  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - PA/DE L:\CFI\LPL\G03.FC 7R-1305 PR-4

Upon recordation return to:
Michael J. Barrie
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801-1611

County Parcel Number:
07-00-00256-00
2500 Concord Rd

RD BK06346-0898        **AS-ASSIGNMENTS**
2019034565    06/28/2019 12:21:10 PM:1
RCD FEE $83.25
                                         DELAWARE
                                         COUNTY
**RECORDER OF DEEDS**

## Assignment of Mortgage

**WALNUT STREET 2014-1 ISSUER, LLC** (the "**Assignor**"), the Mortgagee for the Mortgage described below (as the assignee to the original Mortgagee named below pursuant to an Assignment dated as of December 29, 2014), for and in consideration of the sum of TEN DOLLARS ($10.00), lawful money of the United States of America, paid to it by LSC19, LLC (the "**Assignee**"), the receipt of which is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the Assignee and without recourse, representations or warranties of any kind whatsoever, except for the warranties and representations set forth in that certain Agreement for Sale and Purchase of Loan, dated as of June 13, 2019, by and between Assignor and Assignee, all of the Assignor's right, title and interest in and to that Mortgage dated December 28, 2005 given and executed by LEWIS M. IRVING, SR. a/k/a LEWIS MACEO IRVING, SR. to the original Mortgagee, THE BANCORP BANK, a Delaware chartered banking company, to secure the payment of the principal sum of EIGHT HUNDRED FIFTY THOUSAND DOLLARS AND NO CENTS ($850,000.00), together with interest thereon and the other Obligations recited therein, and recorded in the Office of the Recorder of Deeds of the County of Delaware, Pennsylvania, on July 27, 2006 at 2006069879, in Mortgage Book 3864, Page 54, and being secured by all that certain lot, tract, parcel or piece of ground, together with the improvements erected thereon, situate in the Township of Chester located in Delaware County, Pennsylvania, known as 20.2175 acres on Concord Road as more particularly described in Exhibit A attached hereto; and also the Note or other Obligations recited in the said Mortgage and thereby intended to be secured, and all monies, whether principal, interest or otherwise, due and to become due thereon.

**TO HAVE, HOLD, RECEIVE AND TAKE,** all and singular the hereditaments and premises hereby and thereby granted, described and assigned, or mentioned and intended so to be, with the appurtenances, unto the Assignee to and for its proper use and benefit forever.

**WITNESS** the due execution hereof as of this 17th day of June, 2019.

120954385_1

Signed, Sealed and Delivered
in the presence of:

Print Name: ___Walter Ubinh___

WALNUT STREET 2014-1 ISSUER, LLC

By: _____
    Daniel Sacho

Print Name: ___DANIEL T. SACHO___
Title: Director, Commercial Lending
Bancorp, in its capacity as Asset
Manager for Walnut Street 2014-1 Issuer,
LLC

Signed, Sealed and Delivered
in the presence of:

Print Name: ___Morgan Fletcher___

- 2 -

120954385_1

COMMONWEALTH OF PENNSYLVANIA    )
                                )    ss:
COUNTY OF Philadelphia          )

On this, the 17th day of June, 2019 before me, a Notary Public, the undersigned officer, personally appeared Daniel Ocho , who acknowledged himself/herself to be the Director, Commercial Lending of WALNUT STREET 2014-1 ISSUER, LLC, and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of said bank as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Signature: _____
            Notary Public

My commission expires:

Commonwealth of Pennsylvania - Notary Seal
Sharon L. Morris, Notary Public
Philadelphia County
My commission expires July 26, 2022
Commission number 1115927
Member, Pennsylvania Association of Notaries

The address of the within named Assignee is:

LSC19, LLC
13949 Ventura Blvd., Suite 300
Sherman Oaks, CA 91423

- 3 -

120954385_1

EXHIBIT A

LEGAL DESCRIPTION

ALL THAT CERTAIN lot, piece or parcel of land with the buildings and improvements thereon,
SITUATE, lying and being in the Township of Chester, County of Delaware and State of
Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point in the center line of Concord Road (80 feet wide) as re-established, and in
the center of the Philadelphia and Baltimore Railroad, and at a corner of other lands of the said
John A. Trosino; extending thence by the center line of the said Concord Road, North 43 degrees 12
minutes 10 seconds West, 785.06 feet to a point in the bed of the said re-established Road and in the
original center line of the same; thence along said original center line, North 23 degrees 23 minutes
West, 81.2 feet to a point; thence leaving said road and passing land lands occupied by and known
as the Carter Cemetery along and by the Southeasterly face of stone wall, North 65 degrees 48
minutes and 12 seconds East, 111.2 feet to a point at a corner; thence still by said lands and along
the Northeasterly face of said wall; North 22 degrees 36 minutes 13 seconds West, 52.7 feet to a
point in line of lands now or formerly of Anthony Linski and wife; thence by the last mentioned
lands, North 65 degrees 48 minutes 12 seconds East, 743 feet to a stone in an angle in line of lands of
Howard A. Miller; thence by the last mentioned lands, South 38 degrees 48 minutes 5 seconds East,
994.06 feet to a stone at an angle; thence still by the last mentioned lands, South 19 degrees 28
minutes 27 seconds East 278.48 feet to a point in the center line of the said Philadelphia and
Baltimore Railroad at a corner of said other lands of John A. Trosino; thence by the last mentioned
lands and along the center line of said Railroad, South 89 degrees 17 minutes 50 seconds West,
720.52 feet to the center line of said re-established Concord Road, the point and place of beginning.

CONTAINING 20.2175 acres of land, more or less, inclusive to the center line of Railroad and
Concord Road.

Being Folio #07-00-00256-00

Being the same premises which Lewis M. Irving aka Lewis Maceo Irving Sr. a/k/a Lewis M. Irving
Sr. by Deed dated March 3, 2000 and recorded March 30, 2000 in Delaware County in Vol 1996
Page 1797 conveyed unto Lewis M. Irving, Sr. and B. Vivian Irving, husband and wife 76% interest
and Michael Lewis Irving 24% interest as tenants in common to Lewis M. Irving Sr. and B. Vivian
Irving, husband and wife, in fee.

Being the same premises which Lewis M. Irving a/k/a Lewis Maceo Irving Sr. by Deed dated March
4, 2000 and recorded March 30, 2000 in Delaware County in Vol 1996 Page 1800 conveyed unto
Lewis M. Irving Sr. a/k/a Lewis Maceo Irving Sr. and Michael L. Irving, his son, in fee.

LESS AND EXCEPT ANY AND ALL PROPERTY PREVIOUSLY RELEASED OF RECORD

# Exhibit C

Prepared By:    Ashley A. Federer, Esquire
Deeb Petrakis Blum &Murphy, P.C.
1601 Market Street, Suite 2600
Philadelphia, PA  19103

Tax Parcel Number: 07-00-00256-00

ORDER# BC000899
Record & Return to : SearchTec
314 N 12th St, Suite 100 Phila, Pa. 19107
215-963-8888

## OPEN-END MORTGAGE AND SECURITY AGREEMENT

### [THIS MORTGAGE SECURES FUTURE ADVANCES]

**THIS OPEN-END MORTGAGE AND SECURITY AGREEMENT ("Mortgage")** is made as of this 17th day of November, 2010, by **LEWIS M. IRVING, SR. a/k/a LEWIS MACEO IRVING, SR.**, an adult individual ("**Mortgagor**"), in favor of **THE BANCORP BANK ("Mortgagee")**.

### BACKGROUND

A.    In accordance with the terms of that certain Business Loan Agreement dated December 28, 2005 by and among Mortgagor, B. Vivian Irving a/k/a Bernice V. Irving ("**Bernice**" and, collectively with Mortgagor, the "**Borrower**") and Mortgagee (as amended pursuant to that certain Change in Terms Agreement dated of even date herewith in the face amount of $89,410.93 executed by Borrower in favor of Mortgagee (the "**Change in Terms**"), and as the same may be further amended, modified, supplemented and/or restated from time to time, the "**Loan Agreement**"), Mortgagee agreed to extend to Borrower a term loan in the principal amount of $89,410.93.

B.    Borrower's obligation to repay the above-described credit facility is evidenced by that certain Promissory Note dated December 28, 2005, in the face amount of $100,000.00, by Borrower in favor of Mortgagee (as amended pursuant to the Change in Terms, and as the same may be further amended, modified, supplemented and/or restated from time to time, the "**Note**").

C.    The Loan Agreement, the Note and all documents executed in connection with the Future Advances or any of the other Secured Indebtedness, this Mortgage and all other documents executed and delivered in connection with or collateral to any of the foregoing, as any of the same may be amended, modified, supplemented, extended and/or renewed from time to time, are sometimes referred to collectively as the "**Related Documents**", and the terms and conditions thereof are incorporated herein by reference as though set forth herein in full.

D.    References to defined terms in this Mortgage may be found in **Section 39** hereof. All capitalized terms used herein which are not otherwise defined shall have the meanings given to them in the Loan Agreement.

**NOW, THEREFORE**, Mortgagor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, agrees as follows:

{1675.001 00029454}

RD BK04891-1865
2011009303   02/11/2011 02:17:09 PM:7
RCD FEE: $138.50

MG-MORTGAGE



DELAWARE COUNTY

THOMAS J. JUDGE SR. ROD

1.    **Granting Clause.**  As security for the Secured Indebtedness, Mortgagor mortgages, transfers, assigns, pledges, grants, bargains, sells, conveys, aliens, releases and confirms unto Mortgagee all that certain lot or parcel of ground located in Chester Township, Delaware County, Pennsylvania, tax parcel number 07-00-00256-00, as more fully described in **Exhibit "A"** attached hereto (the **"Premises"**), together with all present and future:

(a)    buildings and improvements erected thereon, and alterations, additions and improvements thereto and all cash and non-cash proceeds thereof (collectively, the **"Improvements"**);

(b)    easements, rights of way, streets, alleys, passage ways, water, water courses, mineral rights, rights, liberties, privileges, hereditaments and the appurtenances belonging or in any way appertaining thereto (collectively, the **"Appurtenances"**);

(c)    reversions, remainders, rents, income, proceeds, issues, profits, fees, payments, grants, franchises, rights, concessions and operating privileges derived from or received in connection with all purposes for which the Premises and Improvements might be employed and all cash and non-cash proceeds thereof (collectively, the **"Rents"**);

(d)    building materials, machinery, apparatus, equipment, fittings, furniture, fixtures and articles of personal property located on, about, under or in the Premises or the Improvements, without regard to whether the same may be affixed to the Premises or Improvements, and used or usable in connection with any present or future operation of the Improvements, including but not limited to all heating, electrical, air conditioning, ventilating, lighting, laundry, incinerating and power equipment, computers, computer equipment and all other property incidental thereto, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, communications apparatus, appliances, furnishings, carpeting, cabinets, partitions, ducts and compressors and all parts and accessories therefor and all substitutions and replacements thereof, and the cash and non-cash proceeds of all of the foregoing, including but not limited to the proceeds of any policy or policies of insurance thereon (collectively, the **"Building Equipment"**);

(e)    awards, decrees, condemnation or other proceeds and settlements made to or for the benefit of Mortgagor by reason of any damage to, destruction of or taking of the Premises or any part thereof or any Improvements or any Building Equipment, whether such award shall be made by reason of the exercise of the right of eminent domain or otherwise, or by any public or private authority, tribunal, corporation or other entity or by any natural person and all cash and non-cash proceeds thereof (collectively, the **"Awards"**); and

(f)    contracts, licenses, permits, approvals, registration, product and manufacturer warranties, guarantees and service agreements, including all manuals, policies, instructions and other documents in connection with the same in favor of Mortgagor or by and between Mortgagor and any and all boards, agencies, departments, governmental or other parties of any kind, relating, directly or indirectly to the Premises, Building Equipment, Improvements, Appurtenances, Rents or Awards and all cash and non-cash proceeds thereof (collectively, the **"Licenses"**).

Mortgagee and its successors and assigns shall have and hold the Premises with the Improvements, Appurtenances, Rents, Building Equipment, Awards, Licenses, and all other property hereby mortgaged, with all appurtenances thereto forever.  All of the property of whatever kind

{1675.001 00029454}                                                - 2 -

EXHIBIT "A"

TO

## OPEN-END MORTGAGE AND SECURITY AGREEMENT

### DESCRIPTION OF PREMISES

ALL THAT CERTAIN lot, piece or parcel of land with the buildings and improvements thereon, SITUATE, lying and being in the Township of Chester, County of Delaware and State of Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point in the center line of Concord Road (80 feet wide) as re-established and in the center of the Philadelphia and Baltimore Railroad, and at a corner of other lands of the said John A. Trosino; extending thence by the center line of the said Concord Road, North 43 degrees 12 minutes 10 seconds West, 785.06 feet to a point in the bed of the said re-established Road and in the original center line of the same; thence along said original center line, North 23 degrees 23 minutes West 81.2 feet to a point; thence leaving said road and passing lands occupied by and known as the Carter Cemetery along and by the Southeasterly face of stone wall, North 65 degrees 48 minutes and 12 seconds East, 111.2 feet to a point at a corner; thence still by said lands and along the Northeasterly face of said wall, North 22 degrees 36 minutes 13 seconds West, 52.7 feet to a point in line of lands now or formerly of Anthony Linski and wife; thence by the last mentioned lands, North 65 degrees 48 minutes 12 seconds East, 743 feet to a stone in an angle in line of lands of Howard A Miller; thence by the last mentioned lands, South 38 degrees 48 minutes 5 seconds East, 994.06 feet to a stone at an angle, thence still by the last mentioned lands, South 19 degrees 28 minutes 27 seconds East, 278.48 feet to a point in the center line of the said Philadelphia and Baltimore Railroad at a corner of said other lands of John A. Trosino; thence by the last mentioned lands and along the center line of said Railroad, South 89 degrees 17 minutes 50 seconds West, 720.52 feet to the center line of said re-established Concord Road, the point and place of beginning.

CONTAINING 20.2175 acres of land, more or less, inclusive to the center line of Railroad and Concord Road.

BEING Folio No. 07-00-00256-00.

BEING the same premises which Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr., Michael L. Irving and B. Vivian Irving, by Deed dated December 21, 2005 and recorded July 27, 2006 in Delaware County in Book 03864 Page 48 as instrument #2006069878, conveyed unto Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr. and Michael L. Irving and B. Vivian Irving and Raphael Irving.

{1675.001 00029699}

described in or covered by this Mortgage may be hereinafter referred to collectively as the **"Mortgaged Property"**.

2.    **Defeasance.**  Mortgagee agrees that if Mortgagor shall promptly pay or cause to be paid to Mortgagee the Secured Indebtedness, and shall perform or cause to be performed all the other terms, conditions, agreements and provisions contained in the Related Documents, all without fraud or delay or deduction or abatement of anything or for any reason and Mortgagee shall no longer have any obligation, agreement or commitment to advance any sums to Borrower, then this Mortgage and the estate hereby granted shall cease, terminate and become void.

3.    **Obligations Secured.**  This Mortgage secures the full and timely payment and performance of:

(a)    any and all obligations of Mortgagor and Borrower to Mortgagee whether now or hereinafter owing or existing, including, without limitation, all obligations under the Related Documents and all Future Advances and the full and timely payment, performance and discharge of all other obligations or undertaking now or hereafter made by or for the benefit of Mortgagor or Borrower, including any guaranty or surety obligations of Mortgagor or Borrower and the undertakings of Mortgagor and Borrower to immediately pay to Mortgagee the amount of any overdraft on any deposit account maintained with Mortgagee, up to a maximum principal amount of indebtedness outstanding at any one time equal to $178,821.86, plus all accrued and unpaid interest thereon; and

(b)    any and all: (i) obligations, costs or expenses assumed or incurred by Mortgagee in connection with any of the Secured Indebtedness; (ii) advances Mortgagee may make or become obligated to make for the protection of the security hereby given, including, without limitation, the unpaid balances of advances made with respect to the Mortgaged Property for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred for the protection of the Mortgaged Property or the lien of this Mortgage; and all expenses incurred by Mortgagee by reason of an Event of Default by Mortgagor hereunder; and (iii) all advances Mortgagee may make to pay toward all or part of the cost of completing any erection, construction, alteration or repair of any part of the Mortgaged Property.

All of the obligations, indebtedness and undertakings described in this **Section 3** may be referred to collectively as the **"Secured Indebtedness"**.

IT IS THE EXPRESS INTENT OF MORTGAGOR THAT THE MORTGAGED PROPERTY SHALL SECURE NOT ONLY THE OBLIGATIONS UNDER THE RELATED DOCUMENTS, BUT ALSO ALL OTHER PRESENT AND FUTURE OBLIGATIONS OF MORTGAGOR AND BORROWER TO MORTGAGEE.

4.    **Future Advances.**  As used herein, the term **"Future Advances"** shall mean: (a) any and all future loans, extensions of credit or other financial accommodations to or for the credit of Mortgagor or Borrower or to third parties upon the surety, guaranty, endorsement or other accommodations of Mortgagor or Borrower, regardless of the amount, the purpose for which such debt may be created and whether any reference is made to this Mortgage therein; and (b) any and all future obligations, indebtedness and/or liabilities of Mortgagor or Borrower to Mortgagee hereafter incurred, due or owing under the provisions of any of the Related Documents.

{1675.001 00029454}    - 3 -

insurance, additional policies or duplicates thereof or, in the alternative, evidence of insurance evidencing the renewal of such insurance and payment of the premiums therefor. Mortgagor shall direct all insurers that in the event of any loss thereunder or the cancellation of any insurance policy, the insurers shall make payments for such loss and pay all returned or unearned premiums directly to Mortgagee and not to Mortgagor and Mortgagee jointly.

In the event of any loss, Mortgagor will give Mortgagee immediate notice thereof and Mortgagee may make proof of loss whether the same is done by Mortgagor. Mortgagee is granted a power of attorney by Mortgagor with full power of substitution to file any proof of loss in Mortgagor's or Mortgagee's name, to endorse Mortgagor's name on any check, draft or other instrument evidencing insurance proceeds, and to take any action or sign any document to pursue any insurance loss claim. Such power being coupled with an interest is irrevocable.

In the event of any loss, Mortgagee, at its option, may: (a) retain and apply all or any part of the insurance proceeds to reduce, in such order and amounts as Mortgagee may elect, the Secured Indebtedness; or (b) disburse all or any part of such insurance proceeds to or for the benefit of Mortgagor for the purpose of repairing or replacing the Mortgaged Property after receiving proof satisfactory to Mortgagee of such repair or replacement, in either case without waiving or impairing the Secured Indebtedness or any provision of this Mortgage. Any deficiency thereon shall be paid by Mortgagor and Borrower to Mortgagee upon demand. Mortgagor shall not take out any insurance without having Mortgagee named as loss payee or additional insured thereon. Mortgagor shall bear the full risk of loss from any loss of any nature whatsoever with respect to the Mortgaged Property.

In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of all or any part of the Secured Indebtedness, all right, title and interest of Mortgagor to any insurance policies then in force covering the Mortgaged Property shall pass to the transferee of the Mortgaged Property.

12.    **Escrow Deposits.**  Mortgagor will deposit with Mortgagee monthly, if so requested by Mortgagee in writing: (a) a sum equal to one-twelfth (1/12) of the annual taxes, sewer and water rents, and such other claims and charges as may be assessed or levied by any Governmental Authority on or against the Mortgagor or the Mortgaged Property, including charges in lieu of taxes; and (b) such amounts as shall be necessary to create a fund adequate to pay the premiums on all insurance required herein prior to expiration of the current policies. Unless otherwise required by law, Mortgagee shall have no obligation to pay interest to Mortgagor on such escrow deposits. It is intended that not later than one month prior to the respective dates on which the premiums shall be due and payable and the real property taxes shall last be due and payable without interest or penalty, and provided no Event of Default shall have occurred and no event shall have occurred which, with the giving of notice or the passage of time or both would become an Event of Default, such sums shall be applied to the payment of the item or items in respect of which such amounts were deposited or, at Mortgagee's option, to the payment of such items in such order of priority as Mortgagee shall determine, as the same become due and payable, and Mortgagor shall make available to Mortgagee proper bills therefor. If Mortgagor is required to have deposited such sums with Mortgagee and the amount then held by Mortgagee on deposit shall be insufficient to pay such premiums or taxes, Mortgagor, upon demand, shall pay to Mortgagee any amount necessary to make up such deficiency. If an Event of Default shall have occurred and remains uncured, Mortgagee may, at its option, apply the amounts then deposited with Mortgagee, or any part thereof, in payment of the Secured Indebtedness. Nothing contained in this Section shall be deemed to affect any right or remedy of Mortgagee under any other provisions of this Mortgage or of any statute or rule of law to pay any

{1675.001 00029454}                                                                                    - 5 -

5.    **Default Rate**.  As used herein, the term "**Default Rate**" shall mean a per annum rate of interest equal to two percent (2%) in excess of the highest rate otherwise payable under the Note.

6.    **Warranty of Title**.  Mortgagor represents that: (a) Mortgagor lawfully holds indefeasible fee simple title to the Mortgaged Property, free of any liens, claims, encumbrances and/or restrictions, except for lien in favor of Mortgagee; (b) this Mortgage creates a valid and enforceable lien against and security interest in the Mortgaged Property subject only to exiting liens in favor of Mortgagee; and (c) Mortgagee, subject to Mortgagor's right of possession prior to an Event of Default, shall quietly enjoy and possess the Mortgaged Property.  Mortgagor covenants to preserve such title and the validity and priority of the lien and security interest hereof and shall forever warrant and defend the same unto Mortgagee against the claims of all persons and parties whatsoever.

7.    **Security Agreement**.  This Mortgage constitutes a security agreement under the Uniform Commercial Code as adopted and existing from time to time in the Commonwealth of Pennsylvania (the "**Code**").  Mortgagor grants to Mortgagee a security interest in and lien upon all that property included within the term "Mortgaged Property" which might otherwise be deemed personal property under the Code, together with all cash and non-cash proceeds of such personal property.  Upon filing this Mortgage in the appropriate offices, this Mortgage shall also be effective as a financing statement filed as a fixture filing in such offices with respect to such personal property.

8.    **Payment of Secured Indebtedness**.  Mortgagor will pay, or cause to be paid, when due the Secured Indebtedness, together with interest thereon, at the times and in the manner as provided in and by the Related Documents.

9.    **Compliance with Terms**.  Mortgagor will promptly and faithfully observe and perform, or cause to be observed and performed, all the terms, covenants and provisions contained herein and in any of the Related Documents.

10.    **Taxes, Rents and Other Charges**.  Mortgagor will pay, prior to the time when interest or penalties commence to accrue thereon, all taxes, sewer and water rents, other claims and charges, including charges in lieu of taxes, owing to all federal, state and local agencies, boards, bureaus and departments (collectively the "**Governmental Authority**").  Within thirty (30) days after the payment of each of the foregoing, Mortgagor will produce to Mortgagee receipts or other satisfactory evidence of such payment.

11.    **Insurance**.  Mortgagor will carry adequate insurance issued by an insurer acceptable to Mortgagee, in amounts acceptable to Mortgagee (at least adequate to comply with any co-insurance provisions) and against all such liability and hazards as are usually carried by entities engaged in the same or a similar business similarly situated or as may be required by Mortgagee. Mortgagor shall carry insurance in the full insurable value of the Mortgaged Property and cause Mortgagee to be named as insured mortgagee with respect to all real property, loss payee (with a lender's loss payable endorsement) with respect to all personal property, and additional insured with respect to all liability insurance, as its interests may appear, with thirty (30) days' notice to be given Mortgagee by the insurance carrier prior to cancellation or material modification of such insurance coverage.

Mortgagor shall cause to be delivered to Mortgagee the insurance policies therefor or in the alternative, evidence of insurance and at least thirty (30) days prior to the expiration of any such

such items and to add the amount of the payment, with interest, as herein provided, to the Secured Indebtedness, and to require payment thereof on demand. If, when making any assignment of this Mortgage, the then mortgagee shall pay over to its assignee the then balance of the deposits made by Mortgagor under this Section, such assigning mortgagee shall have no further obligation to Mortgagor for the proper application of such deposits.

13.   **Maintenance of Mortgaged Property.** Mortgagor: (a) shall maintain the Mortgaged Property in good repair and order; (b) shall not remove from the Premises or Improvements, any Building Equipment or any other property of any nature covered by the lien or security interest granted by this Mortgage, unless such Building Equipment is replaced with comparable Building Equipment of equal or greater value acceptable to Mortgagee; (c) shall not make, install or permit to be made or installed any alterations, additions or improvements of any nature to or in the Mortgaged Property that negatively affect the value of the Mortgaged Property or are structural in nature without obtaining the prior written consent of Mortgagee and without obtaining insurance thereon; and (d) shall not commit or suffer any waste of the Mortgaged Property or make any change in the use thereof which will in any way increase the risk of fire or other hazard or that may impair the security of this Mortgage.

14.   **Declaration of Amount Due and No Set-Off.** Mortgagor shall, within five (5) days after request in person or ten (10) days after request by mail, furnish, or cause to be furnished, a written statement or declaration, duly acknowledged, of the amount due under the Related Documents and whether any offsets or defenses exist thereto or against this Mortgage.

15.   **Compliance with Laws.** Mortgagor shall comply with all laws, ordinances, regulations, agreements, covenants, conditions, contracts, declarations, easements, licenses and restrictions affecting the Mortgaged Property, or any part thereof and will not suffer or permit any violation thereof.

16.   **Maintenance and Preservation of Easements.** Mortgagor will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances, rights of way and other interests and rights in favor of, or constituting any portion of, the Mortgaged Property.

17.   **Other Liens.** Mortgagor will not create, incur, assume or suffer to exist any mortgage, lien, charge, security interest or other encumbrance upon the Mortgaged Property, or any part thereof, other than the liens and security interests created hereby, liens and security interests in favor of Mortgagee and the liens approved herein (if any), or in the Loan Agreement, without the prior written consent of Mortgagee, which consent Mortgagee may withhold in its sole discretion.

In the event that the Mortgaged Property, or any part thereof, is now or hereafter subject to any other mortgage, lien, charge, security interest or other encumbrance, with respect to which Mortgagor shall have received Mortgagee's prior written consent as required herein (the **"Approved Mortgage"**):

(a)   Mortgagor will pay the principal, interest and all other sums due and payable with respect to such Approved Mortgage on or before the applicable due date, and will comply with all of the other terms, covenants and conditions thereof;

(b)      Mortgagor will forward to Mortgagee a copy of the check or other evidence of each payment in connection with the Approved Mortgage;

(c)      Without the prior written consent of Mortgagee, Mortgagor will not enter into any modification, amendment, agreement or arrangement pursuant to which Mortgagor is granted any forbearance or indulgence (as to time or amount) in the payment of any principal, interest or other sums due in accordance with the terms and provisions of the Approved Mortgage;

(d)      Mortgagor will obtain the agreement of the holder, from time to time, of any Approved Mortgage, to send Mortgagee copies of all notices with respect thereto;

(e)      Mortgagor will notify Mortgagee promptly of the receipt of any notice given by the holder of any Approved Mortgage and will forward to Mortgagee a copy of such notice;

(f)      If requested by Mortgagee, Mortgagor shall deliver to the Recorder of Deeds of the county in which the Mortgaged Property is located (the "**Recorder**") for recording the written notice permitted by and in the form required under the provisions of 42 Pa. C.S.A. Section 8143 et seq. (the "**Open-End Mortgage Act**") to limit the indebtedness secured by the holder of the Approved Mortgage and to release the obligation of such holder to make further payments and Mortgagor shall serve a copy of such notice upon the holder of the Approved Mortgage more than three (3) days prior to the delivery of such notice to the Recorder. With respect to the provisions of this **subsection (f)**, Mortgagor appoints Mortgagee as its true and lawful attorney-in-fact (which appointment, being coupled with an interest, shall be irrevocable) to execute and deliver on Mortgagor's behalf the notice referred to in this **subsection (f)**; and

(g)      Mortgagor acknowledges and agrees that Mortgagee has the right to deliver to the holder of the Approved Mortgage written notice of the existence of this Mortgage intended to effect the priority of the lien of such prior mortgage with respect to future advances thereunder.

18.      **Condemnation.** Mortgagor shall notify Mortgagee promptly upon receiving any notice of commencement of any proceedings for the condemnation or other taking of any or all of the Mortgaged Property and shall permit Mortgagee to participate in such proceedings and to receive all proceeds payable to Mortgagor as an award or in settlement, up to the amount of the Secured Indebtedness.      Mortgagor hereby appoints Mortgagee attorney-in-fact for Mortgagor (which appointment, being coupled with an interest, shall be irrevocable): (a) to collect and receive any such awards, damages, payments and compensation from the authorities making the same; (b) to give receipts and acquittances therefor; and (c) to institute, appear in and prosecute any proceeding therefor in the event Mortgagor fails to take such action. All sums collected by or paid to Mortgagee, net of any costs, including attorney's fees, incurred by Mortgagee in collecting the same may be (i) applied by Mortgagee, in such order of priority as Mortgagee shall determine, to the Secured Indebtedness, whether or not then due and payable, or (ii) paid or made available to Mortgagor, on such terms as Mortgagee may specify, without Mortgagee thereby waiving or impairing any equity or lien, under and by virtue of this Mortgage, as a result of any such taking, alteration of grade or other injury to or decrease in value of the Mortgaged Property. If, prior to the receipt by Mortgagee of said sums, the Mortgaged Property shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right, whether or not a deficiency judgment on the Secured Indebtedness shall have been sought, recovered or denied, to receive said sums to the extent of the Secured Indebtedness remaining unsatisfied after such sale, with interest thereon at the Default Rate

and to receive costs and expenses, disbursements, including attorney's fees, incurred by Mortgagee in connection with the collection of said sums.

19.    **Leases; Agreements of Sale.**  Without the prior consent of Mortgagee as to the form and content of any such lease, including without limitation, the term and rental amount of such lease, Mortgagor shall not lease or permit anyone else to lease, any portion of the Mortgaged Property. Mortgagee shall not in any way assume or will be deemed to have assumed any of the obligations as landlord under any leases or as seller under any agreements of sale.  Mortgagor shall perform (or cause to be performed) every obligation of the lessor or seller, as the case may be, and shall enforce every obligation of the lessee or buyer, as the case may be, in every lease or agreement of sale or any tenancy with respect to the Mortgaged Property.  Mortgagor shall not modify, alter, waive or cancel any lease, agreement of sale or any part thereof, nor assign any such lease or any such rents.  At Mortgagee's request, Mortgagor shall deliver or cause to be delivered to Mortgagee, assignments of specific leases together with subordination and/or attornment agreements and estoppel letters or certificates from any or all tenants of the Mortgaged Property, all such assignments, agreements, estoppel letters and certificates to be in such form as Mortgagee may require.

Mortgagor shall furnish to Mortgagee from time to time as requested by Mortgagee a complete list of all agreements of sale and leases for the Mortgaged Property, or any portion thereof, in such detail as may be requested by Mortgagee.  Mortgagor shall deliver to Mortgagee certified copies of all agreements of sale and leases, together with copies of correspondence and memoranda between Mortgagor and purchasers or tenants or any successors thereunder setting forth the contractual arrangements between them.

To the extent permitted by law, Mortgagor shall deposit with Mortgagee all monies collected as security (or escrow) deposits or other deposits under any leases or agreements of sale for the Mortgaged Property or any part thereof, and Mortgagee shall maintain the same in a non-interest bearing account.  Mortgagee shall hold such security deposits pursuant to the terms and conditions of the respective leases or agreements of sale.  To the extent not permitted under law to deposit the foregoing monies with Mortgagee, Mortgagor will comply with all applicable laws relating to such security (or escrow) deposits.

20.    **Right to Remedy.**  In the event Mortgagor should fail to perform any of its obligations hereunder or under any of the other Related Documents, including, without limitation, fail to: (a) pay any taxes, water and sewer rents, assessments, charges, claims, costs, expenses or fees required to be paid under the terms of this Mortgage; (b) maintain insurance as required herein; or (c) make all necessary repairs to the Mortgaged Property as required herein, Mortgagee may advance sums on behalf of Mortgagor to remedy such failure, including, without limitation, payment of any taxes, water and sewer rents, assessments, charges, claims, costs, expenses, fees, insurance premiums and repairs without prejudice to the right of enforcement of the Related Documents.  Mortgagor shall immediately reimburse Mortgagee for any sums advanced by Mortgagee on Mortgagor's behalf.

21.    **Sums Advanced by Mortgagee.**  Any sums advanced by Mortgagee for the payment of any repairs, insurance premiums, taxes, water and sewer rents, assessments, charges, claims, costs, expenses, fees and any other sums advanced by Mortgagee in any way connected with the Mortgaged Property or any of the Related Documents shall be added to and become a part of the Secured Indebtedness, and repayment thereof, together with interest thereon at the Default Rate from the date of the respective expenditure, may be enforced by Mortgagee against Mortgagor at any time.

22.  **Stamps and Taxes.** If at any time any Governmental Authority shall require internal revenue stamps on all or any part of the Related Documents or the Secured Indebtedness, Mortgagor shall pay for same upon demand. If Mortgagor fails to make such payment within fifteen (15) days after demand for same, Mortgagee may pay for such stamps. If any law or ordinance adopted hereafter imposes a tax on Mortgagee with respect to the Mortgaged Property, the value of Mortgagor's equity therein, the amount of the indebtedness secured hereby or this Mortgage, Mortgagee shall have the right at its election, from time to time, to give Mortgagor thirty (30) days written notice to pay the Secured Indebtedness, whereupon the Secured Indebtedness shall become immediately due, payable and collectible at the expiration of such period of thirty (30) days, without further notice or demand. However, if prior thereto, lawfully and without violation of usury laws, Mortgagor has paid any such tax in full as the same became due and payable, such notice shall be deemed to have been rescinded with respect to any right of Mortgagee hereunder arising by reason of the tax so paid.

23.  **Representations and Warranties.** Mortgagor represents and warrants that:

(a)  No notice of taking of any of the Mortgaged Property by eminent domain or condemnation has been received by Mortgagor or its agents, servants or employees and neither Mortgagor nor its agents, servants or employees has knowledge that any such taking or condemnation is contemplated;

(b)  Mortgagor has heretofore given Mortgagee an original executed or true copy of all of the existing leases or agreements of sale relating to the Mortgaged Property, accompanied in each case by all related documents;

(c)  All Licenses have been issued, are in full force and effect and all appeal periods applicable thereto have expired without appeal having been taken; and the current and proposed uses of the Mortgaged Property comply with all applicable zoning laws and other statutes, ordinances, rules and regulations of all governmental authorities having jurisdiction;

(d)  All Licenses are in full force and effect on the date hereof and are not subject to any defenses, set-offs or counterclaims whatsoever;

(e)  All Licenses are fully assignable and Mortgagee may exercise and enjoy all rights and powers granted herein without the necessity of obtaining any consent or approval of any other party; and

(f)  None of the Mortgaged Property has been damaged by fire or other casualty which has not now been fully restored.

24.  **Notices.** In addition to any notice requirements contained elsewhere in this Mortgage or any of the other Related Documents, Mortgagor shall notify Mortgagee of the occurrence of any of the following:

(a)  A fire or other casualty causing damage to any portion of the Mortgaged Property;

(b)  Receipt of notice of condemnation or intended condemnation of any portion of the Mortgaged Property;

{1675.001 00029454}                                              - 9 -

  (c)  Receipt of notice from any government or quasi-governmental authority asserting that the present or proposed development, structure, use or occupancy of the Mortgaged Property constitutes a violation of or noncompliance with any applicable law, statute, code, ordinance, rule or regulation promulgated or enforced by such authority;

  (d)  Receipt of any default or acceleration notice from the holder of any lien or security interest in the Mortgaged Property;

  (e)  Commencement of any litigation affecting the Mortgaged Property, Mortgagor or any guarantor of the Secured Indebtedness; or

  (f)  Receipt of any default or termination notice from any tenant of the Mortgaged Property.

  25.  **Events of Default.** Each of the following shall constitute an event of default hereunder (an "**Event of Default**"):

  (a)  If there shall occur an Event of Default under the Loan Agreement or under any of the other Related Documents.

  (b)  If Mortgagor shall fail to maintain and deliver to Mortgagee any and all policies of insurance herein required.

  (c)  If there shall occur an event of default under any other mortgage encumbering the Premises or any document collateral thereto.

  (d)  If there shall be any sale, lease, transfer or other disposal (whether voluntarily or by operation of law) of all, substantially all, or any portion of the Mortgaged Property or an interest therein without the prior written consent of Mortgagee.

  (e)  If Mortgagee receives notice from any party that is intended to terminate, limit or affect in any manner the indebtedness secured by this Mortgage or the lien priority hereof.

  Any Event of Default under this Mortgage shall constitute a default under any other mortgage from Mortgagor to Mortgagee, under the other Related Documents and under any other agreement between Mortgagor and Mortgagee.

  26.  **Remedies.** Upon the occurrence of an Event of Default, at the option of Mortgagee, all of the Secured Indebtedness shall become immediately due and payable. In such event, Mortgagee may forthwith and without demand exercise any one or more of the following rights and remedies in addition to any of the rights or remedies provided herein or in any other Related Documents or such rights and remedies otherwise available to Mortgagee at law or in equity, without further stay, any law, usage or custom to the contrary notwithstanding:

  (a)  Take possession of the Mortgaged Property and exercise with respect thereto all rights of a mortgagee-in-possession.

  (b)  Collect all proceeds from agreements of sale with respect to the Mortgaged Property and revoke Mortgagor's license to collect all rentals from the Mortgaged Property and, after deducting all costs of collection and administration expenses, apply the net proceeds or rentals to the

payment of taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, maintenance, repair or restoration of the Mortgaged Property, or on account and in reduction of the principal, interest or both of the Secured Indebtedness, in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect.

(c)    Institute any appropriate action or proceeding to foreclose this Mortgage and may proceed therein to judgment and execution for all sums secured by this Mortgage.

(d)    Exercise each and every right available to it as a secured party under the Uniform Commercial Code as enacted in the Commonwealth of Pennsylvania.

(e)    Exercise each and every right granted to it hereunder, under any of the other Related Documents at law or in equity.

(f)    Exercise any and all rights and remedies of Mortgagor under the Licenses, without any interference or objection from Mortgagor.

(g)    As it deems necessary, effect new Licenses, cancel or surrender existing Licenses, alter or amend the terms of and renew existing Licenses and make concessions to any third party in connection therewith.

(h)    Have a receiver appointed to enter into possession of the Mortgaged Property to collect the earnings, revenues, rents, issues, profits and income derived therefrom and apply the same as the court may direct. Mortgagee shall be entitled to the appointment of a receiver without the necessity of proving either the inadequacy of the security or the insolvency of Mortgagor or any other person who may be legally or equitably liable to pay the Secured Indebtedness and Mortgagor and each such person shall be deemed to have waived such proof and to have consented to the appointment of such receiver.

(i)    Construct improvements upon the Mortgaged Property or cause repairs to be made to or otherwise alter any present or existing improvements thereon.

27.    **Confession of Judgment in Ejectment**. MORTGAGOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS THE PROTHONOTARY, CLERK OR ANY ATTORNEY OF ANY COURT OF RECORD OF THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AS WELL AS AGAINST ALL PERSONS CLAIMING UNDER, BY OR THROUGH MORTGAGOR, AND IN FAVOR OF MORTGAGEE, ITS SUCCESSORS OR ASSIGNS, AS OF ANY TERM, PAST, PRESENT OR FUTURE, WITH OR WITHOUT DECLARATION, FOR POSSESSION, CONTROL OR BOTH OF THE PREMISES, IMPROVEMENTS AND BUILDING EQUIPMENT, WITHOUT THE NECESSITY OF FILING ANY BOND AND WITHOUT ANY STAY OF EXECUTION OR APPEAL. THIS INSTRUMENT, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE SUFFICIENT WARRANT THEREFOR; WHEREUPON, APPROPRIATE PROCESS TO OBTAIN POSSESSION, CONTROL OR BOTH OF THE PREMISES, IMPROVEMENTS AND BUILDING EQUIPMENT, INCLUDING LEVY AND EXECUTION, MAY BE ISSUED FORTHWITH, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER. MORTGAGOR HEREBY RELEASES AND AGREES TO RELEASE MORTGAGEE AND SAID ATTORNEYS FROM ALL PROCEDURAL ERRORS

AND DEFECTS WHATSOEVER IN ENTERING SUCH JUDGMENT OR JUDGMENTS OR IN
CAUSING SUCH WRITS OR PROCESS TO BE ISSUED OR IN ANY PROCEEDING THEREON
OR CONCERNING THE SAME, PROVIDED THAT MORTGAGEE SHALL HAVE FILED IN
SUCH ACTION OR ACTIONS AN AFFIDAVIT OR AFFIDAVITS MADE BY SOMBONE ON
MORTGAGEE'S BEHALF SETTING FORTH THE FACTS NECESSARY TO AUTHORIZE THE
ENTRY OF SUCH JUDGMENT OR JUDGMENTS ACCORDING TO THE TERMS OF THIS
INSTRUMENT, OF WHICH FACTS SUCH AFFIDAVIT OR AFFIDAVITS SHALL BE PRIMA
FACIE EVIDENCE. IT IS HEREBY EXPRESSLY AGREED THAT IF FOR ANY REASON
AFTER ANY SUCH ACTION OR ACTIONS HAVE BEEN COMMENCED THE SAME SHALL
BE DISCONTINUED, MARKED SATISFIED OF RECORD OR BE TERMINATED, OR
POSSESSION OF THE PREMISES, IMPROVEMENTS OR BUILDING EQUIPMENT REMAINS
IN OR IS RESTORED TO MORTGAGOR OR ANYONE CLAIMING UNDER, BY OR
THROUGH MORTGAGOR, MORTGAGEE MAY, WHENEVER AND AS OFTEN AS
MORTGAGEE SHALL HAVE THE RIGHT TO AGAIN TAKE POSSESSION OF THE
PREMISES, IMPROVEMENTS AND BUILDING EQUIPMENT, BRING ONE OR MORE
FURTHER CONFESSIONS IN THE MANNER SET FORTH HEREIN TO RECOVER
POSSESSION OF THE PREMISES, IMPROVEMENTS AND BUILDING EQUIPMENT. THE
AUTHORITY AND POWER ABOVE GIVEN SHALL CONTINUE FROM TIME TO TIME AND
AT ALL TIMES UNTIL FINAL PAYMENT IN FULL OF ALL SECURED INDEBTEDNESS.

28. **Remedies Cumulative.** All rights and remedies hereby granted or otherwise
available to Mortgagee shall be cumulative and concurrent; may be pursued singly, successively or
together at Mortgagee's sole option; and may be exercised from time to time and as often as occasion
therefor shall occur until the Secured Indebtedness is paid in full. Mortgagee may resort to any
security it holds in such order and manner as Mortgagee sees fit and may sell at any foreclosure sale
on this Mortgage the Premises, Improvements and Building Equipment in one parcel or in such
parcels as Mortgagee in its sole discretion elects so to do and such foreclosure sale shall pass title to
all such property.

29. **No Release.** No extension or indulgence granted to Mortgagor, no alteration, change
or modification hereof or of any other Loan Document consented or agreed to by Mortgagee and no
other act or omission of Mortgagee, including the taking of additional security or the release of any
security, shall constitute a release of the lien and obligation of this Mortgage or be interposed as a
defense against the enforcement of this Mortgage, except for an act of Mortgagee that constitutes an
express, effective release and satisfaction of the Secured Indebtedness.

30. **Modification.** This Mortgage may not be changed orally or by any course of dealing
between Mortgagor and Mortgagee, but only by an agreement in writing duly executed on behalf of
the party against whom enforcement of any waiver, change, modification or discharge is sought.

31. **Further Assurances.** Mortgagor shall provide Mortgagee from time to time on
request by Mortgagee with such mortgages, agreements, financing statements and additional
instruments, documents or information as Mortgagee may in its discretion deem necessary or
advisable to protect, perfect and/or maintain the liens and security interests in the Mortgaged
Property. Mortgagor hereby authorizes and appoints Mortgagee as Mortgagor's attorney-in-fact
(which appointment, being coupled with an interest, is irrevocable) with full power of subscription,
to execute on Mortgagor's behalf and file at Mortgagor's expense such mortgages, financing
statements and amendments thereto, in those public offices deemed necessary or appropriate by

Mortgagee to establish, maintain and protect a continuously perfected lien and security interest in the Mortgaged Property.

32.  **Communications and Notices**.  All notices, requests and other communications made or given in connection with the Related Documents shall be in writing and, unless receipt is stated herein to be required, shall be deemed to have been validly given if delivered personally to the individual or division or department to whose attention notices to a party are to be addressed, or by private carrier, or registered or certified mail, return receipt requested, or by telecopy with the original forward by first class mail, in all cases with charges prepaid, addressed as follows, until some other address (or individual or division or department for attention) shall have been designed by notice given by one party to the other:

To Mortgagor:

Lewis M. Irving, Sr. a/k/a Lewis Maceo Irving, Sr.
278 Thornton Road
Thornton, PA  18373
Telepcopy Number:_____

To Mortgagee:

The Bancorp Bank
405 Silverside Road
Wilmington, DE  19809
Attention: Doug M. Saylor, AVP
Telecopy Number: (302) 791-5754

With a copy to:

Deeb Petrakis Blum & Murphy, P.C.
1601 Market Street, Suite 2600
Philadelphia, PA  19103
Attention:  Ashley A. Federer, Esquire
Telecopy Number: (215) 563-5532

33.  **Waivers**.  **In connection with any proceedings under the Related Documents, including without limitation any action by Mortgagee in replevin, foreclosure or other court process or in connection with any other action related to the Related Documents or the transactions contemplated hereunder, Mortgagor waives:**

(a)  **all errors, defects and imperfections in such proceedings;**

(b)  **all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered under any of the Related Documents or in any replevin or foreclosure proceeding, or otherwise providing for any valuation, appraisal or exemption;**

(c)    presentment for payment, demand, notice of demand, notice of non-payment, protest and notice of protest of any of the Related Documents, including the Note;

(d)    any requirement for bonds, security or sureties required by statute, court rule or otherwise; and

(e)    any demand for possession of the Mortgaged Property prior to commencement of any suit.

34.    **Construction**.  The use of the words "Mortgagor" or "Mortgagee" shall be deemed to include the successors and assigns of the party or parties.  If there shall be more than one Mortgagor or party constituting the Mortgagor, the obligation of each shall be joint and several.  The use of any gender shall include all genders.  The singular number shall include the plural, or the plural the singular, as the context may require.  Wherever in this Mortgage the Mortgagee's consent or approval is required or permitted, such consent or approval shall be at the sole and absolute discretion of Mortgagee.

35.    **Invalid Provisions Disregarded**.  If any term or provision of this Mortgage or the application thereof to any particular circumstances shall to any extent be invalid or unenforceable, the remainder of this Mortgage or the application of such terms or the provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

36.    **Applicable Law.**  This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles.

37.    **Captions**.  The captions appearing in this Mortgage are inserted solely for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction or effect.

38.    **No Beneficiaries**.  The rights and remedies of this Mortgage shall not inure to the benefit of any third party other than the successors or assigns of Mortgagee.

39.    **Defined Terms**.  Defined terms in this Mortgage may be found in the following Paragraphs, Recitals and Sections:

(a)    Approved Mortgage - Section 17

(b)    Appurtenances - Section 1(b)

(c)    Awards - Section 1(e)

(d)    Building Equipment - Section 1(d)

(e)    Borrower - Recital A

(f)    Code - Section 7

(g)    Default Rate - Section 5

(h)     Event of Default - Section 25

(i)     Future Advances - Section 4

(j)     Governmental Authority - Section 10

(k)     Improvements - Section 1(a)

(l)     Licenses - Section 1(f)

(m)     Loan Agreement - Recital A

(n)     Mortgaged Property - Section 1

(o)     Mortgagee - First Paragraph

(p)     Mortgage - First Paragraph

(q)     Mortgagor - First Paragraph

(r)     Note - Recital B

(s)     Open-End Mortgage Act - Section 17(f)

(t)     Premises - Section 1

(u)     Recorder - Section 17(f)

(v)     Related Documents - Recital D

(w)     Rents - Section 1(c)

(x)     Secured Indebtedness - Section 3

**[SIGNATURE APPEARS ON THE FOLLOWING PAGE]**

**IN WITNESS WHEREOF,** the undersigned has caused this Open-End Mortgage and
Security Agreement to be duly executed the day and year first above written.

MORTGAGOR:

(SEAL)

LEWIS M. IRVING, SR.
a/k/a LEWIS MACEO IRVING, SR.

The address of the within

named Mortgagee is:

278 Thornton Road
Thornton, PA  18373

By

{1675.001 00029454}                              - 16 -

WITNESS the due execution hereof as of this 13th day of June, 2019.

Signed, Sealed and Delivered
in the presence of:

WALNUT STREET 2014-1 ISSUER, LLC

By: _____
Daniel Sacho

Print Name: WALTER LLSinTh

Print Name: DANIEL T SACHA
Title: Director, Commercial Lending
Bancorp, in its capacity as Asset
Manager for Walnut Street 2014-1 Issuer,
LLC

Signed, Sealed and Delivered
in the presence of:

Print Name: Morgan G Fletcher

120954348_1

COMMONWEALTH OF PENNSYLVANIA          )
                                      )    ss:
COUNTY OF Philadelphia                )

    On this, the 17th day of June, 2019 before me, a Notary Public, the undersigned officer, personally appeared Daniel Sacro, who acknowledged himself/herself to be the Director, Commercial Lending of WALNUT STREET 2014-1 ISSUER, LLC, and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of said bank as such officer.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

        Signature: _____
                   Notary Public

    My commission expires:

> Commonwealth of Pennsylvania - Notary Seal
> Sharon L. Morris, Notary Public
> Philadelphia County
> My commission expires July 26, 2022
> Commission number 1115927
> Member, Pennsylvania Association of Notaries

The address of the within named Assignee is:

LSC19, LLC
13949 Ventura Blvd., Suite 300
Sherman Oaks, CA 91423

-3-

120954348_1

Upon recordation return to:
Michael J. Barrie
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801-1611

County Parcel Number:
07-00-00256-00
*2500 Concord Rd*

RD BK06346-0902          **AS-ASSIGNMENTS**
2019034566    08/28/2019 12:21:10 PM:2
RCD FEE: $83.25

DELAWARE
COUNTY

**RECORDER OF DEEDS**

### Assignment of Mortgage

**WALNUT STREET 2014-1 ISSUER, LLC** (the "**Assignor**"), the Mortgagee for the
Mortgage described below (as the assignee to the original Mortgagee named below pursuant to an
Assignment dated as of December 29, 2014), for and in consideration of the sum of TEN DOLLARS
($10.00), lawful money of the United States of America, paid to it by LSC19, LLC (the "**Assignee**"),
the receipt of which is hereby acknowledged, has granted, bargained, sold, assigned, transferred and
set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the Assignee
and without recourse, representations or warranties of any kind whatsoever, except for the warranties
and representations set forth in that certain Agreement for Sale and Purchase of Loan, dated as of
June 13, 2019, by and between Assignor and Assignee, all of the Assignor's right, title and interest
in and to that Mortgage dated November 17, 2010 given and executed by LEWIS M. IRVING, SR.
a/k/a LEWIS MACEO IRVING, SR. to the original Mortgagee, THE BANCORP BANK, a Delaware
chartered banking company, to secure the payment of the principal sum of EIGHTY-NINE
THOUSAND FOUR HUNDRED TEN DOLLARS AND NINETY-THREE CENTS ($89,410.93),
together with interest thereon and the other Obligations recited therein, and recorded in the Office of
the Recorder of Deeds of the County of Delaware, Pennsylvania, on February 11, 2011 at Document
Id: 2011009303, in Mortgage Book 4891, Page 1865, and being secured by all that certain lot, tract,
parcel or piece of ground, together with the improvements erected thereon, situate in the Township
of Chester located in Delaware County, Pennsylvania, known as 20.2175 acres on Concord Road as
more particularly described in <u>Exhibit A</u> attached hereto; and also the Note or other Obligations
recited in the said Mortgage and thereby intended to be secured, and all monies, whether principal,
interest or otherwise, due and to become due thereon.

**TO HAVE, HOLD, RECEIVE AND TAKE,** all and singular the hereditaments and
premises hereby and thereby granted, described and assigned, or mentioned and intended so to be,
with the appurtenances, unto the Assignee to and for its proper use and benefit forever.

**WITNESS** the due execution hereof as of this 17th day of June, 2019.

120954348_1

## ACKNOWLEDGMENT

**COMMONWEALTH OF PENNSYLVANIA**    :

    SS.

**COUNTY OF** *PHILADELPHIA*    :

On this, the 11ᵀᴴ day of Nov. , 2010, before me, a Notary Public, personally appeared LEWIS M. IRVING, SR. a/k/a LEWIS MACEO IRVING, SR., known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

My commission expires:

NOTARIAL SEAL
ANA M MACHADO
Notary Public
PHILADELPHIA CITY, PHILADELPHIA CNTY
My Commission Expires Jul 23, 2012

# EXHIBIT A

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot, piece or parcel of land with the buildings and improvements thereon, SITUATE, lying and being in the Township of Chester, County of Delaware and State of Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point in the center line of Concord Road (80 feet wide) as re-established, and in the center of the Philadelphia and Baltimore Railroad, and at a corner of other lands of the said John A. Trosino; extending thence by the center line of the said Concord Road, North 43 degrees 12 minutes 10 seconds West, 785.06 feet to a point in the bed of the said re-established Road and in the original center line of the same; thence along said original center line, North 23 degrees 23 minutes West, 81.2 feet to a point; thence leaving said road and passing land lands occupied by and known as the Carter Cemetery along and by the Southeasterly face of stone wall, North 65 degrees 48 minutes and 12 seconds East, 111.1 feet to a point at a corner; thence still by said lands and along the Northeasterly face of said wall, North 22 degrees 13 seconds West, 52.7 feet to a point in line of lands now or formerly of Anthony Luiski and wife; thence by the last mentioned lands, North 65 degrees 48 minutes 12 seconds East, 743 feet to a stone in an angle in line of lands of Howard A. Miller; thence by the last mentioned lands, South 38 degrees 48 minutes 5 seconds East, 994.06 feet to a stone at an angle; thence still by the last mentioned lands, South 19 degrees 28 minutes 27 seconds East 278.48 feet to a point in the center line of the said Philadelphia and Baltimore Railroad at a corner of said other lands of John A. Trosino; thence by the last mentioned lands and along the center line of said Railroad, South 89 degrees 17 minutes 50 seconds West, 720.52 feet to the center line of said re-established Concord Road, the point and place of beginning.

CONTAINING 20.2175 acres of land, more or less, inclusive to the center line of Railroad and Concord Road.

Being Folio #07-00-00256-00

Being the same premises which Lewis M. Irving aka Lewis Maceo Irving Sr. a/k/a Lewis M. Irving Sr. by Deed dated March 3, 2000 and recorded March 30, 2000 in Delaware County in Vol 1996 Page 1797 conveyed unto Lewis M. Irving, Sr. and B. Vivian Irving, husband and wife 76% interest and Michael Lewis Irving 24% interest as tenants in common to Lewis M. Irving Sr. and B. Vivian Irving, husband and wife, in fee.

Being the same premises which Lewis M. Irving a/k/a Lewis Maceo Irving Sr. by Deed dated March 4, 2000 and recorded March 30, 2000 in Delaware County in Vol 1996 Page 1800 conveyed unto Lewis M. Irving Sr. a/k/a Lewis Maceo Irving Sr. and Michael L. Irving, his son, in fee.

LESS AND EXCEPT ANY AND ALL PROPERTY PREVIOUSLY RELEASED OF RECORD



Exhibit D

## JUDGMENT LEGAL BALANCE

**Borrower Name:** Lewis M. Irving Sr.
**Loan #:** Case No. 13-3654   Previously Loan # 139008154-1 and Loan # 139008162-1

Updated to:   6/19/2019
Using Actual/365 Days Accrual Method

**Collateral:** 1st Mortgage on Commercial R/E Property located at 2500 Concord Rd, Chester Twnshp, PA 19013

| | |
|---|---|
| Loan Balances into Judgment: | $ 908,623.58 |
| Fee Amounts into Judgment: | $ 171,176.36 |
| Final Confirmed Judgment Amt: | $ 1,079,799.94 |

| | |
|---|---|
| Final Judgment Amt: | $ 1,079,799.94 |
| Judg Effective Date: | 7/6/2015 |
| Date of Final Order: | 3/31/2016 |

| | |
|---|---|
| Judgment Rate in PA: | 6.000% |
| Start Date for Judgment Interest: | 7/6/2015 |

| Transaction Type | Date of Transact | # Days Interest | Total Pymt Received | Accrual Added to Interest Bal | Payment Applied to Interest Bal | Payment Applied to Principal | Addition to Fees Due | Remaining Judgment Balance | Remaining Interest Balance | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 9/14/17 | 801 | | $142,178.59 | | | | $1,079,799.94 | $142,178.59 | |
| Interest Accrual | 9/14/17 | 0 | | | | | | $1,079,799.94 | $142,178.59 | |
| Pymt on Acct | 9/14/17 | 0 | $46,055.40 | | $46,055.40 | | | $1,079,799.94 | $96,123.19 | |
| Pymt on Acct | 9/20/17 | 0 | $10,951.80 | | $10,951.80 | | | $1,079,799.94 | $85,171.39 | |
| Interest Accrual | 9/20/17 | 6 | | $1,065.01 | | | | $1,079,799.94 | $86,236.40 | |
| Pymt on Acct | 9/20/17 | 0 | $11,613.40 | | $11,613.40 | | | $1,079,799.94 | $74,623.00 | |
| Interest Accrual | 9/27/17 | 7 | | $1,242.51 | | | | $1,079,799.94 | $75,865.51 | |
| Pymt on Acct | 9/27/17 | 0 | $1,727.62 | | $1,727.62 | | | $1,079,799.94 | $74,137.89 | |
| Interest Accrual | 11/15/17 | 49 | | $8,697.57 | | | | $1,079,799.94 | $82,835.46 | |
| Pymt on Acct | 11/15/17 | 0 | $80,000.00 | | $80,000.00 | | | $1,079,799.94 | $2,835.46 | |
| Interest Accrual | 2/1/18 | 78 | | $13,845.11 | | | | $1,079,799.94 | $16,680.57 | |
| Pymt on Acct | 2/1/18 | 0 | $9,000.00 | | $9,000.00 | | | $1,079,799.94 | $7,680.57 | |
| Interest Accrual | 3/2/18 | 29 | | $5,147.64 | | | | $1,079,799.94 | $12,828.11 | |
| Pymt on Acct | 3/2/18 | 0 | $10,000.00 | | $10,000.00 | | | $1,079,799.94 | $2,828.11 | |
| Interest Accrual | 4/25/18 | 54 | | $9,585.07 | | | | $1,079,799.94 | $12,413.18 | |
| Pymt on Acct | 4/25/18 | 0 | $5,000.00 | | $5,000.00 | | | $1,079,799.94 | $7,413.18 | |
| Interest Accrual | 6/27/18 | 63 | | $11,182.59 | | | | $1,079,799.94 | $18,595.77 | |
| Pymt on Acct | 6/27/18 | 0 | $5,000.00 | | $5,000.00 | $5,000.00 | | $1,079,799.94 | $13,595.77 | |
| Interest Accrual | 6/13/19 | 351 | | $62,302.98 | | | | $1,079,799.94 | $75,898.75 | |
| Interest Accrual | 6/19/19 | 6 | | $1,065.01 | | | | $1,079,799.94 | $76,963.76 | |
| | | | $ 179,348.22 | $ 256,311.98 | $ 179,348.22 | $ - | $ - | | | |

Remaining Judgment Balance Currently Outstanding =   $ 1,079,799.94   $ 76,963.76

$ 177.50   =   Per Diem Interest

Effective Date of acquisition from Bancorp
Date of Ch 11 Bankruptcy Petition