**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 7 |
|     LEWIS M. IRVING, | Case No. 19-13930 (AMC) |
|                 Debtor | |

**LIMITED OBJECTION OF UNIVEST BANK & TRUST CO. TO MOTION OF
TRUSTEE TO APPROVE AUCTION SALE OF DEBTOR'S ASSETS AND APPROVAL
OF A COMPROMISE WITH THE SECURED CREDITOR**

TO:    THE HONORABLE ASHELY M. CHAN,
        UNITED STATES BANKRUPTCY JUDGE

Univest Bank & Trust Co. ("Univest"), by and through its undersigned attorneys, hereby files this limited objection to the Motion of Trustee to Approve Auction Sale of Debtor's Assets and Approval of a Compromise with the Secured Creditor (the "Motion") filed by trustee Gary F. Seitz, Esquire (the "Trustee") and in support thereof represents as follows:

**BACKGROUND**

1.      On or about December 23, 2014, Fox Chase Bank (the "Original Lender") made certain loans, advances, and extensions of credit to the Lewis M. Irving (the "Debtor") and Vivian Irving in an amount not to exceed $81,078.03 pursuant to the terms of that certain Open-End Mortgage and Security Agreement (the "Loan"). The Loan is evidenced by a Promissory Note (the "Note") dated December 23, 2014.[1]  A copy of the Note is attached as **Exhibit A**.

2.      In consideration for the Loan, the Debtor and Vivian Irving gave a mortgage (the "Mortgage") in favor of the Original Lender secured by real property known as and located at 58-

---

[1]    As described on page 1 of the Note, the Note replaces the original promissory note, which was dated November 17, 2009, and included an original principal balance of $90,000.00.

60 E. Mowry Street, Chester, PA 19013 (the "Property"). The Mortgage was recorded by the Recorder of Deeds of Delaware County, Pennsylvania on February 2, 2015 at Book 05600, Page 0257. A true and correct copy of the Mortgage is attached as **Exhibit B**.

3.      Univest is the current holder of the Note and Mortgage as a result of its acquisition of the Original Lender on or about July 1, 2016.  A true and correct copy of the recorded Articles of Merger is attached as **Exhibit C**.

4.      The Debtor filed a voluntary chapter 11 bankruptcy proceeding on June 19, 2019 (the "Petition Date").

5.      As of the Petition Date, the Debtor owed Univest no less than $72,521.16. Univest filed a proof of claim on January 7, 2020 evidencing this secured debt and first priority lien on the Property at Claim No. 13. A true and correct copy of Univest's proof of claim is attached as **Exhibit D**.

6.      On January 8, 2020, Debtor's case was converted by order of this Court to a chapter 7 liquidation proceeding.

7.      On June 4, 2021, the Trustee filed the instant Motion, seeking, *inter alia*, Court approval to sell the Property at auction.[2]

8.      While Univest does not generally oppose the Motion, Univest objects to sale of the Property without receiving proceeds in the amount due and owing on the Loan.  Univest also objects to any surcharge of its collateral in connection with the sale.  Accordingly, Univest files this limited opposition for the purpose of protecting its secured interest in the Property, as described in further detail below.

---

[2]      Paragraph 14 of the Motion provides "In addition, the Debtor listed other business assets identified as…58 East Mowry Street Chester PA."

## <u>THE RELIEF SOUGHT AND THE REASONS THEREFOR</u>

9.      As noted by the Trustee in his Motion, and as set forth above, the Trustee is seeking to sell at auction assets of the Debtor including the Property.

10.      The Motion makes no reference to Univest's secured first priority lien on the Property, as is evidenced by its proof of claim.  *See* Ex. D.

11.      While Univest does not oppose the sale of the Property at auction, it does oppose such a sale without appropriate protection of its secured interest in the Property.

12.      To that end, Univest respectfully requests that any sale of the Property as proposed in the Motion be conditioned upon the proceeds due and owing to Univest in connection with its Mortgage being distributed to Univest.

13.      Univest also objects to any surcharge of its collateral in connection with the proposed sale.

## <u>CONCLUSION</u>

14.      For the reasons set forth above, Univest respectfully requests that the Court sustain its objection.

15.      Univest expressly reserves the right to raise additional objections to the Motion at the hearing.

WHEREFORE, Univest respectfully requests the entry of an order sustaining its objection to the Motion, along with such other and further relief as appropriate.

PHIL1 9344128v.3

Respectfully submitted:

Dated:  June 25, 2021                          **KLEHR | HARRISON | HARVEY|
                                               BRANZBURG LLP**

                              By:    */s/ Christopher J. Leavell*
                                     William R. Hinchman, Esquire
                                     Christopher J. Leavell, Esquire
                                     1835 Market Street, Suite 1400
                                     Philadelphia, PA 19103
                                     Telephone: (215) 569-2700

                                     *Counsel to Univest Bank & Trust Co.*

PHIL1 9344128v.3

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $81,078.03 | 12-23-2014 | 12-01-2019 | | | 981107 | 90250 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Lewis M. Irving, Sr.
B. Vivian Irving
278 Thornton Road
Thornton, PA 19373-1059

**Lender:** Fox Chase Bank
4390 Davisville Road
Hatboro, PA 19040-2544

---

**Principal Amount: $81,078.03**     **Date of Note: December 23, 2014**

**REPLACEMENT NOTE.** This Promissory Note replaces the original Promissory Note dated November 17, 2009 in the original amount of $90,000.00 which has a current principal balance outstanding as of even date herewith of $81,078.03

**PROMISE TO PAY.** Lewis M. Irving, Sr.; and B. Vivian Irving ("Borrower") jointly and severally promise to pay to Fox Chase Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eighty-one Thousand Seventy-eight & 03/100 Dollars ($81,078.03), together with interest on the unpaid principal balance from December 23, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.500% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $606.62 each and one irregular last payment estimated at $69,826.55. Borrower's first payment is due January 1, 2015, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 1, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest as shown on the most recent statement or bill provided to Borrower (or if no statement or bill has been provided for any reason, it shall be applied to the unpaid interest accrued since the last payment); then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Fox Chase Bank, 4390 Davisville Road Hatboro, PA 19040-2544.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**PROMISSORY NOTE**
(Continued)

Page 2

Loan No: ███████████

---

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**COLLATERAL.**
This Promissory Note is secured by that certain Mortgage granted from Borrower to Lender dated November 17, 2009 recorded on January 6, 2010 with the Delaware County Recorder of Deeds in RD 04682-1652, and that certain Assignment of Rents granted from Borrower to Lender dated November 17, 2009, recorded on January 6, 2010 with the Dlaware County Recorder of Deeds in RD BK04682-1661.

**CONTINUING VALIDITY.** Except as expressly changed by this Promissory Note, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s) remain unchanged and in full force and effect. Consent by Lender to this Promissory Note does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Promissory Note will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Promissory Note below, then all persons signing below acknowledge that this Promissory Note is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Promissory Note or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR

**PROMISSORY NOTE**
(Continued)

Loan No: ~~XXXXXXXXX~~

MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT.  THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE.  BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _Lewis M. Irving SR_ (Seal)
Lewis M. Irving, Sr.

X _B. Vivian Irving_ (Seal)
B. Vivian Irving

LaserPro, Ver. 14.5.10.004  Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - PA  S:\Harland\CFI\LPL\D35.FC  TR-1293  PR-6

# EXHIBIT B

Parcel Identification
   Number:
   49-01-02316-00

RECORDATION
   REQUESTED BY:
   Fox Chase Bank
   4390 Davisville Road
   Hatboro, PA  19040-2544

ORDER# FXL05198
Record & Return to : SearchTec
314 N 12th St, Suite 100 Phila, Pa. 19107
215-963-0888



**FOR RECORDER'S USE ONLY**

## OPEN - END MORTGAGE AND SECURITY AGREEMENT

*(This instrument is an open-end mortgage and secures future advances pursuant to 42 Pa. C.S. §§ 8143 and 8144, Act No. 126 of 1990)*

**Amount Secured Hereby:**   $81,078.03

**THIS MORTGAGE dated December 23, 2014, is made and executed between Lewis M. Irving, Sr. and Vivian Irving, his wife, whose address is 278 Thornton Road, Thornton, PA 19373-1059 (referred to below as "Grantor") and Fox Chase Bank, whose address is 4390 Davisville Road, Hatboro, PA  19040-2544 (referred to below as "Lender").**

**GRANT OF MORTGAGE.  For valuable consideration, Grantor** grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Delaware County, Commonwealth of Pennsylvania:**

    **See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.**

**The Real Property or its address is commonly known as  58-60 E. Mowry Street, Chester, PA 19013.  The Real Property parcel identification number is 49-01-02316-00.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $81,078.03, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

RD BK05600-0257              MG-MORTGAGE

2015006336   02/02/2015 02:04:07 PM:5

RCD FEE: $122.50

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

## Exhibit "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected. SITUATE in the City of Chester, County of Delaware and State of Pennsylvania.

SITUATE on the West side of Mowry Street (50 feet wide) at the distance of 32 feet, 6 inches Southward from the South side of Houston Street (50 feet wide).

CONTAINING in front or breadth on the said Mowry Street, 32 feet, 6 inches and extending of that width in length or depth Westward, 85 feet.

FOLIO NO. 49-01-02316-00.

BEING THE SAME PREMISES WHICH Viola Cox, by Indenture dated 10/7/2005 and recorded on 3/18/2006 in the Delaware County Recorder of Deeds Office in Deed Book 3752, Page 1661, granted and conveyed unto Lewis M. Irving, Sr. and Vivian Irving, his wife, in fee.

# MORTGAGE
Loan No: ████████        **(Continued)**                                    Page 2

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**Loan No:** ████████

## MORTGAGE
## (Continued)

Page 3

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under

**MORTGAGE**
**(Continued)**

Loan No: ████████                                                                        Page 4

this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available

**Loan No:** ████████

# MORTGAGE
## (Continued)

Page 5

remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on

Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and, with or without taking possession of the Property, to collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's Indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default;

**MORGAGE**

Loan No: [REDACTED]                    **(Continued)**                    Page 7

and the Grantor consents to such appointment. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Possession of the Property.** For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown

**MORTGAGE**
**(Continued)**

Loan No: ▮▮▮▮▮▮▮▮                                                              Page 8

near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADVANCE MONEY MORTGAGE.** (A) This Mortgage secures future advances made pursuant to the Note or Related Documents. Without limiting the foregoing, this Mortgage secures all advances made by Lender or Banks of any kind or nature described in 42 Pa. C.S.A. § 8144. (B) If Grantor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to or for the benefit of Grantor, such a notice shall be ineffective as to any future advances made: (1) to enable completion of the improvements on the Real Property for which the loan secured hereby was originally made; (2) to pay taxes, assessments, maintenance charges and insurance premiums; (3) for costs incurred for the protection of the Property or the lien of this Mortgage; (4) on account of expenses incurred by Lender by reason of a default of Grantor hereunder or under the Related Documents or under the Note; and (5) on account of any other costs incurred by Lender to protect and preserve the Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Grantor shall be secured by the lien of this Mortgage on the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** **This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successor Interests.** The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal

**MORTGAGE**
**(Continued)**

Loan No: [redacted]

Page 9

representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Lewis M. Irving, Sr.; and B. Vivian Irving and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Lewis M. Irving, Sr.; and B. Vivian Irving.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Fox Chase Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 23, 2014, **in the original principal amount of $81,078.03** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

| Loan No: ▮▮▮▮▮ | MORTGAGE<br>(Continued) | Page 10 |

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
Lewis M. Irving, Sr.

X _____ (Seal)
B. Vivian Irving

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, **Fox Chase Bank**, herein is as follows:

**4390 Davisville Road, Hatboro, PA  19040-2544**

_____
Attorney  or Agent  for Mortgagee

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA          )
                                                                   ) SS
COUNTY OF _Delaware_                              )

On this, the _23_ day of _December_, 20 _14_, before me _____
_Beverly Volikas_, the undersigned Notary Public, personally appeared **Lewis M. Irving, Sr. and B. Vivian Irving**, known to me (or satisfactorily proven) to be the person whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public in and for the State of _PA_

```
NOTARIAL SEAL
BEVERLY A VOLIKAS
Notary Public
MEDIA BOROUGH, DELAWARE COUNTY
My Commission Expires May 24, 2015
```

LaserPro,  Ver.  14.5.10.004     Copr.   D+H  USA  Corporation  1997,  2014.     All  Rights  Reserved.     - PA
S:\Harland\CFI\LPL\G03.FC  TR-1293  PR-6

# EXHIBIT C

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE
BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS
401 NORTH STREET, ROOM 206
P.O.BOX 8722
HARRISBURG,PA 17105-8722
WWW.CORPORATIONS.PA.GOV

Stevens & Lee PC *** COUNTER PICK-UP - DO NOT MAIL *** [CDA - 20228]
111 North 6th St// PO Box 679
Reading PA 19603-0679

Univest Bank and Trust Co

        THE BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS IS HAPPY
TO SEND YOUR FILED DOCUMENT. THE BUREAU IS HERE TO SERVE YOU AND WE WOULD
LIKE TO THANK YOU FOR DOING BUSINESS IN PENNSYLVANIA.

        IF YOU HAVE ANY QUESTIONS PERTAINING TO THE BUREAU,PLEASE VISIT OUR
WEBSITE AT www.dos.pa.gov/BusinessCharities OR YOU MAY CONTACT US BY TELEPHONE AT
(717)787-1057. INFORMATION REGARDING BUSINESS AND UCC FILINGS CAN BE FOUND ON
OUR SEARCHABLE DATABASE AT www.corporations.pa.gov/Search/CorpSearch .

                ENTITY NUMBER :  4169487

Entity# : 4169487
Date Filed : 06/30/2016
Effective Date : 07/01/2016
Pedro A. Cortés
Secretary of the Commonwealth

## ARTICLES OF MERGER

In compliance with the requirements of Section 1603(f) of the Pennsylvania Banking Code of 1965 (7 P.S. §1603(f)) (relating to articles of merger), the undersigned institutions, desiring to effect a merger, hereby certify that:

1. The names of the parties to the Plan of Merger are:

      (a)   Univest Bank and Trust Co.

      (b)   Fox Chase Bank

      (c)   The name of the resulting institution is:  Univest Bank and Trust Co.

2. The location and post office address of the principal place of business of each party to the Plan of Merger are:

      (a)   Univest Bank and Trust Co.
           14 North Main Street
           Souderton, Pennsylvania 18964

      (b)   Fox Chase Bank
           4390 Davisville Road
           Hatboro, PA 19040

3. The votes by which the Plan of Merger was adopted and the time, place and notice of each meeting in connection with such adoption are:

      (a)   Univest Bank and Trust Co.

           (1)   Board of Directors:

| | |
|---|---|
| Directors entitled to vote: | Six (one vote per director) |
| Votes:   For: | Six |
|           Against: | None |
| Date: | December 8, 2015 |
| Place: | 14 North Main Street, Souderton, PA |
| Kind and Period of Notice: | 5 days written notice |

           (2)   Shareholders:

| | |
|---|---|
| Shares entitled to vote: | 480,059  (one vote per share) |
| Votes:   For: | 480,059 |
|           Against: | None |
| Date: | June 14, 2016 |
| Place: | 14 North Main Street, Souderton, PA |
| Kind and Period of Notice: | N/A; action by unanimous written consent |

PA DEPT. OF STATE

JUN 3 0 2016

TML160701UZ0664

SL1 1406831v2 007819.00015

(b)  Fox Chase Bank

    (1)  Board of Directors:

| | |
|---|---|
| Directors entitled to vote: | Seven    (one vote per director) |
| Votes:    For: | Seven |
|       Against: | None |
| Date: | December 8, 2015 |
| Place: | 4390 Davisville Road, Hatboro, PA |
| Kind and Period of Notice: | 5 days written notice |

    (2)  Shareholders:

| | |
|---|---|
| Shares entitled to vote: | 100   (one vote per share) |
| Votes:    For: | 100 |
|       Against: | -0- |
| Date: | June 14, 2016 |
| Place: | 4390 Davisville Road Hatboro, PA |
| Kind and Period of Notice: | N/A; action by unanimous written consent |

4. The names of the directors of Univest Bank and Trust Co. as the resulting institution, the address for each of which is c/o Univest Bank and Trust Co., 14 North Main Street, Souderton, PA 18964, are set forth below:

| | |
|---|---|
| William S. Aichele | K. Leon Moyer |
| R. Lee Delp | Jeffrey M. Schweitzer |
| Michael S. Keim | Paul Gregory Shelly |

5. The articles of incorporation of Univest Bank and Trust Co., as the resulting institution, shall remain as the articles of incorporation of the resulting institution.

6. The Plan of Merger is attached hereto as Exhibit A and is incorporated herein by reference.

7. These Articles of Merger shall become effective upon the later of: (a) filing with the Pennsylvania Department of State, or (b) 12:02 a.m. on July 1, 2016.

SL1 1406831v2 007819.00015

IN TESTIMONY WHEREOF, each undersigned institution has caused these Articles of Merger to be signed by a duly authorized officer and has caused its corporate seal, duly attested by another such officer, to be hereunto affixed as of the 14th day of June, 2016.

UNIVEST BANK AND TRUST CO.

By: _____
Michael S. Keim
President

[Corporate Seal]             Attest:_____


FOX CHASE BANK

By: _____
Thomas M. Petro
President and Chief Executive Officer

[Corporate Seal]             Attest:_____

3

IN TESTIMONY WHEREOF, each undersigned institution has caused these Articles of Merger to be signed by a duly authorized officer and has caused its corporate seal, duly attested by another such officer, to be hereunto affixed as of the 14th day of June, 2016.

UNIVEST BANK AND TRUST CO.

By: _____
       Michael S. Keim
       President

[Corporate Seal]             Attest:_____


FOX CHASE BANK

By: _____
       Thomas M. Petro
       President and Chief Executive Officer

[Corporate Seal]             Attest:_____

## BANK PLAN OF MERGER

THIS BANK PLAN OF MERGER (this "Plan of Merger"), dated as of June 14, 2016 is made by and between UNIVEST BANK AND TRUST CO., a Pennsylvania-chartered bank and trust company ("UBank"), and FOX CHASE BANK, a Pennsylvania-chartered savings bank ("FCBank").

## BACKGROUND

1. UBank is a Pennsylvania-chartered bank and trust company and a wholly-owned subsidiary of Univest Corporation of Pennsylvania, a Pennsylvania corporation ("UCP"). The authorized capital stock of UBank consists of 5,000,000 shares of common stock, par value $5.00 per share ("UBank Common Stock"), of which, at the date hereof, 480,059 shares are issued and outstanding.

2. FCBank is a Pennsylvania-chartered savings bank and a wholly-owned subsidiary of Fox Chase Bancorp, Inc., a Maryland corporation ("FCBancorp"). The authorized capital stock of FCBank consists of 4,000 shares of common stock, par value $1.00 per share ("FCBank Common Stock"), of which, at the date hereof, 100 shares are issued and outstanding, and 1,000 shares of preferred stock, par value $1.00 per share, of which, at the date hereof, no shares are issued and outstanding.

3. The respective boards of directors of UBank and FCBank deem the merger of FCBank with and into UBank, pursuant to the terms and conditions set forth or referred to herein, to be desirable and in the best interests of the respective corporations and their respective shareholders.

4. The respective boards of directors of UBank and FCBank have adopted resolutions approving this Plan of Merger. The respective boards of directors of UCP and FCBancorp have adopted resolutions approving an Agreement and Plan of Merger, dated as of December 8, 2015 (the "Agreement"), between UCP and FCBancorp, pursuant to which this Plan of Merger is being executed by UBank and FCBank.

## AGREEMENT

In consideration of the premises and of the mutual covenants and agreements herein contained, and in accordance with the provisions of the Pennsylvania Banking Code of 1965, as amended and regulations of the Pennsylvania Department of Banking and Securities (the "PDB") thereunder (together, the "Pennsylvania Banking Code"), UBank and FCBank, intending to be legally bound hereby, agree:

## ARTICLE I
## MERGER

Subject to the terms and conditions of this Plan of Merger and in accordance with the Pennsylvania Banking Code, on the Effective Date (as that term is defined in Article V hereof): FCBank shall merge with and into UBank; the separate existence of FCBank shall cease; and UBank shall be the surviving entity (such transaction referred to herein as the "Merger" and

1

UBank, as the surviving entity in the Merger, referred to herein as the "Surviving Bank"). The name of the Surviving Bank shall be "Univest Bank and Trust Co.," and it shall have its principal office at 14 North Main Street, Souderton, Pennsylvania 18964.

## ARTICLE II
## CHARTER AND BYLAWS

On and after the Effective Date, the Articles of Incorporation and Bylaws of UBank, as in effect immediately prior to the Effective Date, shall automatically be and remain the Articles of Incorporation and Bylaws of the Surviving Bank, until altered, amended or repealed.

## ARTICLE III
## BOARD OF DIRECTORS AND OFFICERS

3.1.  Board of Directors.  On and after the Effective Date, the directors of the Surviving Bank shall consist of the following persons:

> William S. Aichele
> R. Lee Delp
> Michael S. Keim
> K. Leon Moyer
> Jeffrey M. Schweitzer
> P. Gregory Shelly

3.2.  Officers.  On and after the Effective Date, the executive officers of the Surviving Bank shall consist of the following persons:

| | |
|---|---|
| William S. Aichele | - Chairman |
| Jeffrey M. Schweitzer | - CEO |
| Michael S. Keim | - President |
| Roger S. Deacon | - Treasurer and Chief Financial Officer |
| Duane J. Brobst | - Senior Executive Vice President and Chief Risk Officer |
| Megan D. Santana | - Corporate Secretary |

## ARTICLE IV
## CONVERSION OF SHARES

4.1.  Stock of UBank.  Each share of UBank Common Stock issued and outstanding immediately prior to the Effective Date shall, on and after the Effective Date, continue to be issued and outstanding as a share of common stock of the Surviving Bank.

4.2.  Stock of FCBank.  Each share of FCBank Common Stock issued and outstanding immediately prior to the Effective Date, and each share of FCBank Common Stock issued and held in treasury as of the Effective Date, if any, shall, on the Effective Date, be cancelled, and no cash, stock or other property shall be delivered in exchange therefor.

2

## ARTICLE V
## EFFECTIVE DATE OF THE MERGER

The Merger shall be effective on the date and at the time specified by the PDB upon the filing of Articles of Merger with the Pennsylvania Department of State (the "Effective Date"). In no event, however, will the Merger be effective until all of the following events have taken place: (a) the merger of FCBancorp with and into UCP shall have been completed in accordance with the Agreement; (b) the sole shareholders of each of UBank and FCBank shall have adopted this Bank Plan of Merger; and (c) the applicable waiting period under the Bank Merger Act (12 USC §1828(c)) shall have expired.

## ARTICLE VI
## EFFECT OF THE MERGER

On the Effective Date, the separate existence of FCBank shall cease, and all of the property (real, personal and mixed), rights, powers, duties and obligations of FCBank shall be taken and deemed to be transferred to and vested in the Surviving Bank, without further act or deed, as provided in the Pennsylvania Banking Code and other applicable laws and regulations. Such obligations shall include all of FCBank's obligations with respect to the liquidation account that was established at the time FCBank or any of its savings bank predecessors converted from the mutual to the stock form of organization.

## ARTICLE VII
## TERMINATION

This Plan of Merger shall terminate upon any termination of the Agreement in accordance with its terms.

## ARTICLE VIII
## AMENDMENT

Subject to applicable law, this Plan of Merger may be amended by action of the respective boards of directors of the parties hereto at any time prior to completion of the Merger, but only by an instrument in writing signed by duly authorized officers on behalf of the parties hereto.

## ARTICLE IX
## MISCELLANEOUS

9.1. Extensions; Waivers. Any of the terms and conditions of this Plan of Merger may be waived at any time by whichever of the parties hereto is, or the sole shareholder of which is, entitled to the benefit thereof by a written instrument signed by a duly authorized officer of such party.

9.2. Notices. Any notice or other communication required or permitted under this Plan of Merger shall be given, and shall be effective, in accordance with the provisions of the Agreement.

3

9.3.  Captions.  The headings of the Articles and Sections herein are inserted for convenience of reference only and are not intended to be part of, or to affect the meaning or interpretation of, this Plan of Merger.

9.4.  Counterparts.  For the convenience of the parties hereto, this Plan of Merger may be executed in several counterparts, each of which shall be deemed the original, but all of which together shall constitute one and the same instrument.  A facsimile copy or electronic transmission of a signed signature page shall be deemed to be an original signature page for all purposes.

9.5.  Governing Law.  This Plan of Merger shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to its laws or principles of conflicts of laws.

IN WITNESS WHEREOF, the parties hereto have caused this Plan of Merger to be executed by their duly elected officers.

UNIVEST BANK AND TRUST CO.

By: _____
      Michael S. Keim, President

FOX CHASE BANK

By: _____
      Thomas M. Petro, President and CEO

4

SL1 1393674v4 007819.00015

9.3. <u>Captions</u>.  The headings of the Articles and Sections herein are inserted for convenience of reference only and are not intended to be part of, or to affect the meaning or interpretation of, this Plan of Merger.

9.4. <u>Counterparts</u>.  For the convenience of the parties hereto, this Plan of Merger may be executed in several counterparts, each of which shall be deemed the original, but all of which together shall constitute one and the same instrument.  A facsimile copy or electronic transmission of a signed signature page shall be deemed to be an original signature page for all purposes.

9.5. <u>Governing Law</u>.  This Plan of Merger shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to its laws or principles of conflicts of laws.

IN WITNESS WHEREOF, the parties hereto have caused this Plan of Merger to be executed by their duly elected officers.

UNIVEST BANK AND TRUST CO.

By: _____
    Michael S. Keim, President

FOX CHASE BANK

By: _____
    Thomas M. Petro, President and CEO

{Clients/1588/00270855.DOCX/2 }

SL1 1393674v4 007819.00015

Approval is hereby granted by the Pennsylvania Department of Banking and Securities for the

merger of FOX CHASE BANK, Hatboro, Pennsylvania, with and into UNIVEST BANK AND

TRUST CO., Souderton, Pennsylvania, this **30th day of June, A.D. 2016**, to be effective as of

**12:02 a.m. on July 1, 2016**.


Wendy S. Spicher
Deputy Secretary for
Depository Institutions

 **pennsylvania**
DEPARTMENT OF BANKING
AND SECURITIES

June 30, 2016                              717-787-5783

Ms. Janine Jones
Legal Assistant Supervisor
Business Processing Division
Corporation Bureau
Department of State
206 North Office Building
Harrisburg, PA 17105-8722

**RE: Articles of Merger - FOX CHASE BANK, Hatboro, Pennsylvania, with and into UNIVEST
BANK AND TRUST CO., Souderton, Pennsylvania pursuant to Chapter 16 of the
Pennsylvania Banking Code of 1965**

Dear Ms. Jones:

Pursuant to Chapter 16 of the Pennsylvania Banking Code of 1965, we are delivering herewith
the subject Articles of Merger with written approval of the Department of Banking and Securities
endorsed thereon.

We have concluded the required investigation and other studies incident to the merger and find
the requirements of law have been complied with fully. In addition, we have been advised that
all requisite approvals have been issued by the Federal supervisory agencies.

We request the Department of State record the Articles of Merger to be effective as of **12:02
a.m. on July 1, 2016.** The recorded Articles of Merger should be sent to **Mr. Timothy F.
Demers, Esquire, Stevens & Lee, 111 North Sixth Street, P.O. Box 679, Reading, PA 19603.**

Attached is a check in the amount of $150.00, which represents the required filing fee.

                                        Sincerely,

                                        Wendy S. Spicher
                                        Deputy Secretary for
                                        Depository Institutions

Enclosures

cc: John Vogel, Regional Director, Federal Deposit Insurance Corporation
    H. Robert Tillman, Assistant Vice President, Federal Reserve Bank of Philadelphia

# EXHIBIT D

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor 1    Lewis M. Irving

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Eastern District of Pennsylvania

Case number    19-13930

## Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

### Part 1:   Identify the Claim

**1. Who is the current creditor?**

Univest Bank and Trust Co., successor-by-merger to Fox Chase Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Klehr Harrison Harvey Branzburg, LLP
Name

1835 Market Street
Number      Street

Philadelphia          PA          19103
City                State          ZIP Code

Contact phone  215-569-2796

Contact email  whinchman@klehr.com

Where should payments to the creditor be sent? (if different)

Univest Bank and Trust Co.
Name

14 North Main Street
Number      Street

Souderton          PA          18964
City                State          ZIP Code

Contact phone  (215) 721-2551

Contact email  gorceyb@univest.net

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — — —

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
            MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

6.  **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __5__ __2__ __3__ __0__

7.  **How much is the claim?**  $_____ 72521.16 . **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8.  **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned

9.  **Is all or part of the claim secured?**
☐ No
☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**    recorded mortgage
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____ unknown
**Amount of the claim that is secured:**    $_____ 72521.16

**Amount of the claim that is unsecured:**  $_____ 0 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____ 0

**Annual Interest Rate** (when case was filed) __6.5__ %
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ **No** | | | |
|---|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ **Yes.** *Check one:* | | **Amount entitled to priority** | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ | |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ | |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ | |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ | |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ | |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ | |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | | | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  _____/_____/_____
            MM  /  DD  /  YYYY

_____
  Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Byron | | Gorcey |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Special Assets Portfolio Manager |
|---|---|

| Company | Univest Bank and Trust Co. |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 14 North Main Street | | |
|---|---|---|---|
| | Number      Street | | |
| | Souderton | PA | 18964 |
| | City | State | ZIP Code |

| Contact phone | (215) 721-2547 | Email gorceyb@univest.net |
|---|---|---|

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $81,078.03 | 12-23-2014 | 12-01-2019 | ▓▓▓▓▓ | | 981107 | 90250 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Lewis M. Irving, Sr.
B. Vivian Irving
278 Thornton Road
Thornton, PA 19373-1059

**Lender:** Fox Chase Bank
4390 Davisville Road
Hatboro, PA 19040-2544

---

**Principal Amount: $81,078.03**                 **Date of Note: December 23, 2014**

**REPLACEMENT NOTE.** This Promissory Note replaces the original Promissory Note dated November 17, 2009 in the original amount of $90,000.00 which has a current principal balance outstanding as of even date herewith of $81,078.03

**PROMISE TO PAY.** Lewis M. Irving, Sr.; and B. Vivian Irving ("Borrower") jointly and severally promise to pay to Fox Chase Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eighty-one Thousand Seventy-eight & 03/100 Dollars ($81,078.03), together with interest on the unpaid principal balance from December 23, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.500% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $606.62 each and one irregular last payment estimated at $69,826.55. Borrower's first payment is due January 1, 2015, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 1, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest as shown on the most recent statement or bill provided to Borrower (if no statement or bill has been provided for any reason, it shall be applied to the unpaid interest accrued since the last payment); then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Fox Chase Bank, 4390 Davisville Road Hatboro, PA 19040-2544.

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**PROMISSORY NOTE**
(Continued)

Loan No: ▮▮▮▮▮▮▮▮                                                                                                      Page 2

---

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**COLLATERAL.**
This Promissory Note is secured by that certain Mortgage granted from Borrower to Lender dated November 17, 2009 recorded on January 6, 2010 with the Delaware County Recorder of Deeds in RD 04682-1652, and that certain Assignment of Rents granted from Borrower to Lender dated November 17, 2009, recorded on January 6, 2010 with the Dlaware County Recorder of Deeds in RD BK04682-1661.

**CONTINUING VALIDITY.** Except as expressly changed by this Promissory Note, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s) remain unchanged and in full force and effect. Consent by Lender to this Promissory Note does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Promissory Note will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Promissory Note below, then all persons signing below acknowledge that this Promissory Note is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Promissory Note or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR

### PROMISSORY NOTE
#### (Continued)

Loan No: ▮▮▮▮▮▮▮▮

MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT.  THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE.  BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
Lewis M. Irving, Sr.

X _____ (Seal)
B. Vivian Irving

LaserPro, Ver. 14.5.10.004  Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - PA  S:\Harland\CFI\LPL\D20.FC  TR-1293  PR-6

*To S-T*
*1-26-15*
*New mail*

Parcel Identification
  Number:
  49-01-02316-00

RECORDATION
  REQUESTED BY:
  Fox Chase Bank
  4390 Davisville Road
  Hatboro, PA  19040-2544

WHEN RECORDED MAIL
  TO:
  Fox Chase Bank
  4390 Davisville Road
  Hatboro, PA  19040-2544

FOR RECORDER'S USE ONLY

## OPEN - END MORTGAGE AND SECURITY AGREEMENT

*(This instrument is an open-end mortgage and secures future advances pursuant to 42 Pa. C.S.
§§ 8143 and 8144, Act No. 126 of 1990)*

Amount Secured Hereby:   $81,078.03

THIS MORTGAGE dated December 23, 2014, is made and executed between Lewis M. Irving, Sr. and Vivian Irving, his wife, whose address is 278 Thornton Road, Thornton, PA 19373-1059 (referred to below as "Grantor") and Fox Chase Bank, whose address is 4390 Davisville Road, Hatboro, PA  19040-2544 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Delaware County, Commonwealth of Pennsylvania:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as  58-60 E. Mowry Street, Chester, PA 19013.  The Real Property parcel identification number is 49-01-02316-00.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $81,078.03, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

# MORTGAGE
## (Continued)

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

# MORTGAGE
## (Continued)

Loan No:

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under

**MORGAGE**
(Continued)

Loan No: ████████                                                    Page 4

this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available

# MORTGAGE
## (Continued)

Loan No: ████████                                                    Page 5

---

remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on

## MORTGAGE
(Continued)

Loan No: ████████                                                                    Page 6

Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and, with or without taking possession of the Property, to collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's Indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default;

# MORTGAGE
## (Continued)

and the Grantor consents to such appointment. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Possession of the Property.** For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown

**MORTGAGE**
(Continued)

Loan No: ▓▓▓▓▓▓▓

Page 8

near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage and notices pursuant to 42 Pa. C.S.A. Section 8143, et. seq., shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADVANCE MONEY MORTGAGE.** (A) This Mortgage secures future advances made pursuant to the Note or Related Documents. Without limiting the foregoing, this Mortgage secures all advances made by Lender or Banks of any kind or nature described in 42 Pa. C.S.A. § 8144. (B) If Grantor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to or for the benefit of Grantor, such a notice shall be ineffective as to any future advances made: (1) to enable completion of the improvements on the Real Property for which the loan secured hereby was originally made; (2) to pay taxes, assessments, maintenance charges and insurance premiums; (3) for costs incurred for the protection of the Property or the lien of this Mortgage; (4) on account of expenses incurred by Lender by reason of a default of Grantor hereunder or under the Related Documents or under the Note; and (5) on account of any other costs incurred by Lender to protect and preserve the Property or the lien of this Mortgage. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Grantor shall be secured by the lien of this Mortgage on the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Delaware County, Commonwealth of Pennsylvania.

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successor Interests.** The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal



# MORTGAGE
## (Continued)

representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Lewis M. Irving, Sr.; and B. Vivian Irving and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Lewis M. Irving, Sr.; and B. Vivian Irving.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Fox Chase Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 23, 2014, **in the original principal amount of $81,078.03** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

## MORTGAGE
(Continued)

Loan No: ████████                                                   Page 10

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
Lewis M. Irving, Sr.

X _____ (Seal)
B. Vivian Irving

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, **Fox Chase Bank**, herein is as follows:

4390 Davisville Road, Hatboro, PA  19040-2544

_____
Attorney  or Agent  for Mortgagee

---

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA        )
                                    ) SS
COUNTY OF _Delaware_                )

On this, the _23_ day of _December_, 20 _14_, before me _____
_Bev Volikas_, the undersigned Notary Public, personally appeared Lewis M. Irving, Sr. and B. Vivian Irving, known to me (or satisfactorily proven) to be the person whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public in and for the State of ___PA___

```
NOTARIAL SEAL
BEVERLY A VOLIKAS
Notary Public
MEDIA BOROUGH, DELAWARE COUNTY
My Commission Expires May 24, 2015
```

LaserPro, Ver. 14.5.10.004    Copr.  D+H  USA  Corporation  1997, 2014.    All  Rights  Reserved.    - PA
S:\Harland\CFI\LPL\G03.FC  TR-1293  PR-6

## Exhibit "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.  SITUATE in the City of Chester, County of Delaware and State of Pennsylvania.

SITUATE on the West side of Mowry Street (50 feet wide) at the distance of 32 feet, 6 inches Southward from the South side of Houston Street (50 feet wide).

CONTAINING in front or breadth on the said Mowry Street, 32 feet, 6 inches and extending of that width in length or depth Westward, 85 feet.

FOLIO NO. 49-01-02316-00.

BEING THE SAME PREMISES WHICH Viola Cox, by Indenture dated 10/7/2005 and recorded on 3/18/2006 in the Delaware County Recorder of Deeds Office in Deed Book 3752, Page 1661, granted and conveyed unto Lewis M. Irving, Sr. and Vivian Irving, his wife, in fee.

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 19-13930 |
| Debtor 1: | Lewis M. Irving |
| Debtor 2: | |
| Last 4 digits to identify: | 5  2  3  0 |
| Creditor: | Univest Bank & Trust |
| Servicer: | |
| Fixed accrual/daily simple interest/other: | 12.25182 |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 67856.27 |
| Interest due: | 404.66 |
| Fees, costs due: | 4260.23 |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | – |
| Total debt: | 72521.16 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 0 |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | – |
| Total prepetition arrearage: | 0 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | 606.62 |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | 606.62 |

## Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| PLEASE | SEE | | ATT'D | | | | | | | | | | | | | |

Official Form 410A    Mortgage Proof of Claim Attachment    page 1 of ___

History                                                                                              1/6/2020

████████ - Lewis M Irving Sr - 1-4 Family 1st
Lien

| | | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | | 12/17/2019 | 12/17/2019 | 12/01/2019 | Manually Keyed-No Split | 216 - Increase Other Cha... | $867.42 | $67,856.27 |
| | | 12/16/2019 | 12/16/2019 | 12/01/2019 | Generated | 804 - Late Charge Assess... | $3,392.81 | $67,856.27 |
| ⊠ | T | 12/09/2019 | 12/09/2019 | 12/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $67,856.27 |
| | | 11/29/2019 | 11/29/2019 | | Generated | 891 - Status Change | | $68,093.61 |
| ⊠ | T | 11/12/2019 | 11/12/2019 | 11/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $68,093.61 |
| ⊠ | T | 10/15/2019 | 10/15/2019 | 10/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $68,317.25 |
| ⊠ | T | 09/09/2019 | 09/09/2019 | 09/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $68,552.22 |
| ⊠ | T | 08/08/2019 | 08/08/2019 | 08/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $68,773.62 |
| ⊠ | T | 07/15/2019 | 07/15/2019 | 07/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $68,993.49 |
| ⊠ | T | 05/31/2019 | 05/31/2019 | 06/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $69,225.18 |
| ⊠ | T | 04/26/2019 | 04/26/2019 | 05/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $69,443.31 |
| ⊠ | T | 04/01/2019 | 04/01/2019 | 04/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $69,672.54 |
| ⊠ | T | 02/27/2019 | 02/27/2019 | 03/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $69,888.07 |
| ⊠ | T | 02/11/2019 | 02/11/2019 | 02/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $70,139.71 |
| ⊠ | T | 12/31/2018 | 12/31/2018 | 01/01/2019 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $70,352.59 |
| ⊠ | T | 12/03/2018 | 12/03/2018 | 12/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $70,564.17 |
| ⊠ | T | 10/31/2018 | 10/31/2018 | 11/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $70,787.39 |
| ⊠ | T | 09/28/2018 | 09/28/2018 | 10/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $70,996.75 |
| ⊠ | T | 09/04/2018 | 09/04/2018 | 09/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $71,217.50 |
| ⊠ | T | 07/30/2018 | 07/30/2018 | 08/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $71,424.45 |
| ⊠ | T | 07/11/2018 | 07/11/2018 | 07/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $71,629.71 |
| ⊠ | T | 06/04/2018 | 06/04/2018 | 06/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $71,847.05 |
| ⊠ | T | 05/07/2018 | 05/07/2018 | 05/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $72,050.16 |
| ⊠ | T | 04/02/2018 | 04/02/2018 | 04/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.63) | $72,265.30 |
| ⊠ | T | 02/28/2018 | 02/28/2018 | 03/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $72,466.37 |
| ⊠ | T | 01/29/2018 | 01/29/2018 | 02/01/2018 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $72,705.53 |
| | | 01/02/2018 | 01/02/2018 | 01/01/2018 | Multiple Entry | 1 - Regular Payment | ($606.62) | $72,904.05 |
| | | 11/29/2017 | 11/29/2017 | 12/01/2017 | Multiple Entry | 1 - Regular Payment | ($606.62) | $73,101.58 |
| | | 11/03/2017 | 11/03/2017 | 11/01/2017 | Multiple Entry | 1 - Regular Payment | ($606.62) | $73,311.03 |
| | | 09/28/2017 | 09/28/2017 | 10/01/2017 | Multiple Entry | 1 - Regular Payment | ($606.62) | $73,506.33 |

Univest Bank and Trust Co                                                                            Page 1

History

- Lewis M Irving Sr - 1-4 Family 1st
Lien

1/6/2020

| | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | 09/07/2017 | 09/07/2017 | 09/01/2017 | Multiple Entry | 1 - Regular Payment | ($606.62) | $73,713.46 |
| | 08/03/2017 | 08/03/2017 | 08/01/2017 | Multiple Entry | 1 - Regular Payment | ($606.62) | $73,906.34 |
| ⊠ T | 07/05/2017 | 07/05/2017 | 07/01/2017 | Captured from POD | 10 - Regular Payment wit... | ($636.95) | $74,098.07 |
| | 06/01/2017 | 06/01/2017 | 06/01/2017 | Multiple Entry | 1 - Regular Payment | ($636.95) | $74,302.58 |
| | 05/22/2017 | 05/22/2017 | 05/01/2017 | Multiple Entry | 1 - Regular Payment | ($606.62) | $74,521.29 |
| | 05/16/2017 | 05/16/2017 | 05/01/2017 | Generated | 804 - Late Charge Assess... | $30.33 | $74,722.79 |
| ⊠ T | 04/12/2017 | 04/12/2017 | 04/01/2017 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $74,722.79 |
| ⊠ T | 02/23/2017 | 02/23/2017 | 03/01/2017 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $74,910.36 |
| ⊠ T | 02/07/2017 | 02/07/2017 | 02/01/2017 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $75,136.93 |
| ⊠ T | 01/09/2017 | 01/09/2017 | 01/01/2017 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $75,321.69 |
| ⊠ T | 12/08/2016 | 12/08/2016 | 12/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $75,505.44 |
| ⊠ T | 11/02/2016 | 11/02/2016 | 11/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $75,701.97 |
| ⊠ T | 10/03/2016 | 10/03/2016 | 10/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $75,883.79 |
| ⊠ T | 09/12/2016 | 09/12/2016 | 09/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($700.00) | $76,077.78 |
| ⊠ T | 08/12/2016 | 08/12/2016 | 08/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($706.62) | $76,349.88 |
| ⊠ T | 07/05/2016 | 07/05/2016 | 08/01/2016 | Captured from POD | 14 - Principal Pymt-Not a... | ($93.38) | $76,628.11 |
| ⊠ T | 07/05/2016 | 07/05/2016 | 07/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $76,721.49 |
| ⊠ T | 06/16/2016 | 06/16/2016 | 07/01/2016 | Captured from POD | 14 - Principal Pymt-Not a... | ($93.38) | $76,910.07 |
| ⊠ T | 06/16/2016 | 06/16/2016 | 06/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $77,003.45 |
| ⊠ T | 05/05/2016 | 05/05/2016 | 05/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($700.00) | $77,177.88 |
| ⊠ T | 04/01/2016 | 04/01/2016 | 05/01/2016 | Captured from POD | 14 - Principal Pymt-Not a... | ($93.38) | $77,458.32 |
| ⊠ T | 04/01/2016 | 04/01/2016 | 04/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $77,551.70 |
| ⊠ T | 03/14/2016 | 03/14/2016 | 04/01/2016 | Captured from POD | 14 - Principal Pymt-Not a... | ($93.38) | $77,628.56 |
| ⊠ T | 03/14/2016 | 03/14/2016 | 03/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $77,721.94 |
| ⊠ T | 01/11/2016 | 01/11/2016 | | Captured from POD | 14 - Principal Pymt-Not a... | ($93.38) | $77,721.94 |
| ⊠ T | 01/11/2016 | 01/11/2016 | 12/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $77,815.32 |
| | 12/17/2015 | 12/17/2015 | 01/01/2016 | Captured from POD | 10 - Regular Payment wit... | ($700.00) | $78,139.08 |
| ⊠ T | 11/09/2015 | 11/09/2015 | 12/01/2015 | Captured from POD | 10 - Regular Payment wit... | ($700.00) | $78,232.46 |
| ⊠ T | 10/28/2015 | 10/28/2015 | 12/01/2015 | Captured from POD | 14 - Principal Pymt-Not a... | ($93.38) | $78,818.80 |
| ⊠ T | 10/28/2015 | 10/28/2015 | 11/01/2015 | Captured from POD | 10 - Regular Payment wit... | ($606.62) | $78,912.18 |

Univest Bank and Trust Co

History    Lewis M Irving Sr - 1-4 Family 1st    1/6/2020
Lien

| Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|--------|-----------|-----|--------|------------------------|--------|---------|
| 09/30/2015 | 09/30/2015 | 10/01/2015 | | 912 - Interest Payment S... | ($429.74) | $79,076.22 |
| 09/30/2015 | 09/30/2015 | 10/01/2015 | | 914 - Principal Payment S... | ($176.88) | $79,076.22 |
| 09/30/2015 | 09/30/2015 | 10/01/2015 | | 910 - Regular Payment wi... | ($606.62) | $79,253.10 |
| 09/30/2015 | 09/30/2015 | 11/01/2015 | | 914 - Principal Payment S... | ($93.38) | $79,253.10 |
| 08/28/2015 | 08/28/2015 | 09/01/2015 | | 912 - Interest Payment S... | ($445.67) | $79,346.48 |
| 08/28/2015 | 08/28/2015 | 09/01/2015 | | 914 - Principal Payment S... | ($160.95) | $79,346.48 |
| 08/28/2015 | 08/28/2015 | 10/01/2015 | | 14 - Principal Pymt-Not a... | ($93.38) | $79,507.43 |
| 08/28/2015 | 08/28/2015 | 09/01/2015 | | 910 - Regular Payment wi... | ($606.62) | $79,600.81 |
| 08/05/2015 | 08/05/2015 | 08/01/2015 | | 912 - Interest Payment S... | ($447.62) | $79,600.81 |
| 08/05/2015 | 08/05/2015 | 08/01/2015 | | 914 - Principal Payment S... | ($159.00) | $79,600.81 |
| 08/05/2015 | 08/05/2015 | 08/01/2015 | | 910 - Regular Payment wi... | ($606.62) | $79,759.81 |
| 08/05/2015 | 08/05/2015 | 09/01/2015 | | 914 - Principal Payment S... | ($93.38) | $79,759.81 |
| 07/13/2015 | 07/13/2015 | 07/01/2015 | | 912 - Interest Payment S... | ($434.18) | $79,853.19 |
| 07/13/2015 | 07/13/2015 | 07/01/2015 | | 914 - Principal Payment S... | ($172.44) | $79,853.19 |
| 07/13/2015 | 07/13/2015 | 08/01/2015 | | 14 - Principal Pymt-Not a... | ($93.38) | $80,025.63 |
| 07/13/2015 | 07/13/2015 | 07/01/2015 | | 910 - Regular Payment wi... | ($606.62) | $80,119.01 |
| 06/03/2015 | 06/03/2015 | 06/01/2015 | | 912 - Interest Payment S... | ($450.08) | $80,119.01 |
| 06/03/2015 | 06/03/2015 | 06/01/2015 | | 914 - Principal Payment S... | ($156.54) | $80,119.01 |
| 06/03/2015 | 06/03/2015 | 06/01/2015 | | 910 - Regular Payment wi... | ($606.62) | $80,275.55 |
| 06/03/2015 | 06/03/2015 | 07/01/2015 | | 914 - Principal Payment S... | ($93.38) | $80,275.55 |
| 05/11/2015 | 05/11/2015 | 05/01/2015 | | 912 - Interest Payment S... | ($374.95) | $80,368.93 |
| 05/11/2015 | 05/11/2015 | 05/01/2015 | | 914 - Principal Payment S... | ($168.62) | $80,368.93 |
| 05/11/2015 | 05/11/2015 | 05/01/2015 | | 910 - Regular Payment wi... | ($543.57) | $80,537.55 |
| 05/11/2015 | 05/11/2015 | 06/01/2015 | | 914 - Principal Payment S... | ($156.43) | $80,537.55 |
| 04/20/2015 | 04/20/2015 | 04/01/2015 | | 911 - Late Charge Split Out | ($30.33) | $80,693.98 |
| 04/20/2015 | 04/20/2015 | 04/01/2015 | | 912 - Interest Payment S... | ($452.70) | $80,693.98 |
| 04/20/2015 | 04/20/2015 | 05/01/2015 | | 912 - Interest Payment S... | ($63.05) | $80,693.98 |
| 04/20/2015 | 04/20/2015 | 04/01/2015 | | 914 - Principal Payment S... | ($153.92) | $80,693.98 |
| 04/20/2015 | 04/20/2015 | 05/01/2015 | | 910 - Regular Payment wi... | ($63.05) | $80,847.90 |
| 04/20/2015 | 04/20/2015 | 04/01/2015 | | 910 - Regular Payment wi... | ($636.95) | $80,847.90 |

Lewis M Irving Sr - 1-4 Family 1st
Lien

| | Posted | Effective | Due | Source | Transaction Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | 04/16/2015 | 04/16/2015 | 04/01/2015 | | 804 - Late Charge Assess... | $30.33 | $80,847.90 |
| | 03/06/2015 | 03/06/2015 | 03/01/2015 | | 912 - Interest Payment S... | ($576.92) | $80,847.90 |
| | 03/06/2015 | 03/06/2015 | 03/01/2015 | | 914 - Principal Payment S... | ($29.70) | $80,847.90 |
| | 03/06/2015 | 03/06/2015 | 03/01/2015 | | 910 - Regular Payment wi... | ($606.62) | $80,877.60 |
| | 03/06/2015 | 03/06/2015 | 03/01/2015 | | 914 - Principal Payment S... | ($94.00) | $80,877.60 |
| | 02/11/2015 | 02/11/2015 | 02/01/2015 | | 912 - Interest Payment S... | ($543.57) | $80,971.60 |
| | 02/11/2015 | 02/11/2015 | 02/01/2015 | | 910 - Regular Payment wi... | ($543.57) | $80,971.60 |
| | 02/11/2015 | 02/11/2015 | 03/01/2015 | | 914 - Principal Payment S... | ($106.43) | $80,971.60 |
| | 01/20/2015 | 01/20/2015 | 01/01/2015 | | 911 - Late Charge Split Out | ($30.33) | $81,078.03 |
| | 01/20/2015 | 01/20/2015 | 02/01/2015 | | 912 - Interest Payment S... | ($63.05) | $81,078.03 |
| | 01/20/2015 | 01/20/2015 | 01/01/2015 | | 912 - Interest Payment S... | ($606.62) | $81,078.03 |
| | 01/20/2015 | 01/20/2015 | 02/01/2015 | | 910 - Regular Payment wi... | ($63.05) | $81,078.03 |
| | 01/20/2015 | 01/20/2015 | 01/01/2015 | | 910 - Regular Payment wi... | ($636.95) | $81,078.03 |
| | 01/16/2015 | 01/16/2015 | 01/01/2015 | | 804 - Late Charge Assess... | $30.33 | $81,078.03 |
| | 12/31/2014 | 12/31/2014 | | | 889 - Interest Rate Change | | $81,078.03 |
| | 12/16/2014 | 12/16/2014 | 12/01/2014 | | 804 - Late Charge Assess... | $4,076.71 | $81,078.03 |
| | 11/03/2014 | 11/03/2014 | 11/01/2014 | | 912 - Interest Payment S... | ($473.71) | $81,078.03 |
| | 11/03/2014 | 11/03/2014 | 11/01/2014 | | 914 - Principal Payment S... | ($15?.??) | $81,078.03 |
| | 11/03/2014 | 11/03/2014 | 11/01/2014 | | 910 - Regular Payment wi... | ($629.02) | $81,233.34 |
| | 11/03/2014 | 11/03/2014 | 12/01/2014 | | 914 - Principal Payment S... | ($170.98) | $81,233.34 |
| | 10/31/2014 | 10/31/2014 | 10/31/2014 | | 10000 - Deferred Expens... | ($4.69) | $81,404.32 |
| | 10/31/2014 | 10/31/2014 | 10/31/2014 | | 1000? - Deferred Fee De... | $2.97 | $81,404.32 |
| | 10/14/2014 | 10/14/2014 | 10/01/2014 | | 912 - Interest Payment S... | ($459.10) | $81,404.32 |
| | 10/14/2014 | 10/14/2014 | 10/01/2014 | | 914 - Principal Payment S... | ($169.92) | $81,404.32 |
| | 10/14/2014 | 10/14/2014 | 10/01/2014 | | 910 - Regular Payment wi... | ($629.02) | $81,574.24 |
| | 10/14/2014 | 10/14/2014 | 11/01/2014 | | 914 - Principal Payment S... | ($70.98) | $81,574.24 |
| | 09/30/2014 | 09/30/2014 | 09/30/2014 | | 10000 - Deferred Expens... | ($8.75) | $81,645.22 |
| | 09/30/2014 | 09/30/2014 | 09/30/2014 | | 10003 - Deferred Fee De... | $5.54 | $81,645.22 |
| | 08/30/2014 | 08/30/2014 | 08/30/2014 | | 10000 - Deferred Expens... | ($8.74) | $81,645.22 |
| | 08/30/2014 | 08/30/2014 | 08/30/2014 | | 10003 - Deferred Fee De... | $5.53 | $81,645.22 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

      LEWIS M. IRVING,

                Debtor

Chapter 7

Case No. 19-13930 (AMC)

## ORDER

AND NOW, this ____ day of _____, 2021, upon consideration of the

Motion of Trustee to Approve Auction Sale of Debtor's Assets and Approval of a Compromise

with the Secured Creditor (the "Motion") filed by trustee Gary F. Seitz (the "Trustee") and the

Limited Objection of Univest Bank & Trust Co. ("Univest") filed thereto, it is hereby ORDERED

that:

1.      The Motion is granted, subject to the conditions listed below.

2.      The proceeds from the sale of the property located at 58-60 E. Mowry Street,

Chester, PA 19013 (the "Property") shall be distributed to Univest up to and including the amount

due and owing in connection with its loan secured by the Property.

3.      Univest's interest in the Property shall not be surcharged in connection with the

sale of the Property.

4.      This order shall survive the conversion, dismissal, or termination of this bankruptcy

case, and shall be binding upon the Debtor, and/or any trustee presently acting or subsequently

appointed to this or any subsequent bankruptcy case filed by the Debtor.

SO ORDERED:

_____
HON. ASHELY M. CHAN
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:

      LEWIS M. IRVING,

              Debtor

Chapter 7

Case No. 19-13930 (AMC)

**CERTIFICATE OF SERVICE FOR UNIVEST BANK & TRUST CO.'S
LIMITED OBJECTION TO MOTION OF TRUSTEE TO APPROVE AUCTION SALE
OF DEBTOR'S ASSETS AND APPROVAL OF A COMPROMISE WITH THE
SECURED CREDITOR**

I, Christopher J. Leavell, Esquire, hereby certify that on June 25, 2021, I caused a true and correct copy of the foregoing Limited Objection to the Motion of Trustee to Approve Auction Sale of Debtor's Assets and Approval of a Compromise with the Secured Creditor to be served via the CM/ECF System of this Bankruptcy Court upon all parties registered to receive notice.

**KLEHR | HARRISON | HARVEY|
BRANZBURG LLP**

By:    */s/ Christopher J. Leavell*
       William R. Hinchman, Esquire
       Christopher J. Leavell, Esquire
       1835 Market Street, Suite 1400
       Philadelphia, PA 19103
       Telephone: (215) 569-2700

       *Counsel to Univest Bank & Trust Co.*