IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| LEWIS M. IRVING | ) | CASE NO. 19-13930-AMC |
| | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**TRUSTEE'S REPORT OF SALE**

Pursuant to Fed. R. Bankr. P. 6004(f)(1), Gary F. Seitz, Trustee in the above-captioned case, reports that pursuant to the 7/22/2021 order [doc. 177] authorizing the sale of 2500 Concord Road, Chester PA, the estate property was sold for the sum of $450,000. The Trustee executed a Corrected Agreement of Sale (copy attached), correcting the name of the Buyer listed in the Agreement of Sale previously submitted with the Supplemental Declaration filed by the Trustee from “Haven Memorial Cemetery and Crematory, Inc.” to “Haven Memorial Park Cemetery and Crematory, Inc.” The toal proceeds of the sale were collected by the trustee from the buyer and pursuant to the order approving the sale, a payment of $410,000 was made to the secured creditor in payment of its lien. The sale was subject to all other liens and claims and the buyer has paid or will pay all closing costs.

/s/ Gary F. Seitz

September 2, 2021
Date

Gary F. Seitz, Chapter 7 Trustee

# CORRECTED AGREEMENT FOR THE SALE OF BUSINESS ASSETS

**THIS CORRECTED AGREEMENT FOR THE SALE OF CERTAIN BUSINESS REAL ESTATE ("Agreement"),** dated as of **July 8, 2021,** by and between **Gary F. Seitz, Esquire, Chapter 7 Bankruptcy Trustee of the Bankruptcy Estate of Lewis M. Irving, Debtor ("Seller"),** in the Chapter 7 Case captioned *In re Lewis M. Irving*, Case No. 19-13930-AMC, in the United States Bankruptcy Court for the Eastern District of Pennsylvania, and **Haven Memorial Park Cemetery and Crematory, Inc.** ("**Buyer**") are hereafter, by reason of the content of this Agreement and the execution thereof, subject to Bankruptcy Court approval, legally bound:

## WITNESSETH:

**WHEREAS,** Seller is in control of all those certain lots or pieces of land with any buildings and improvements thereon erected as of the date hereof, located at and known as and as described more particularly in Exhibit "A," attached hereto and made a part hereof (hereinafter, the **"Business Assets");** and

**WHEREAS,** Seller wishes to sell and Buyer wishes to purchase the Business Assets, subject to the terms and conditions hereinafter set forth; and

**NOW, THEREFORE,** the parties hereto, in considerations of the foregoing, of the mutual covenants and promises hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, agree as follows:

### 1. SUBJECT MATTER OF THE AGREEMENT

Upon and subject to the terms and conditions set forth in this Agreement, Seller agrees to sell and convey to Buyer and Buyer agrees to purchase and accept from Seller, the Business Assets described in Exhibit "A," attached hereto and made a part hereof, together with any and all improvements, buildings, and fixtures (if any)

### 2. PURCHASE PRICE AND PAYMENT

The purchase price for the Property **("Purchase Price")** shall be $450,000.00 (Four Hundred Fifty Thousand and No/100 dollars) payable as follows:

**a. Deposit at Signing.** Buyer upon the execution hereof by Seller, shall deliver a check the sum of Fifty Thousand Dollars $50,000.00 (the **"Deposit")** payable to the order of the Trustee. The deposit shall not be refundable if buyer breaches this agreement and fails to timely cure the claimed breach.



b. **Balance at Closing.** At the Closing hereof, Buyer shall pay the balance of the Purchase Price necessary to complete the Closing, together with any and all closing costs, to Seller/Trustee, in cash, bank check or other immediately available funds.

3. **CLOSING**

   a. Closing shall occur no later than five days after the bankruptcy court order approving the sale is entered.

   b. Upon written request, the closing date shall be extended to the date that is no later than 15 days following the date of bankruptcy court approval of the sale.

   c. Absent settlement within this period, Buyer is deemed in default of the agreement of sale. Where buyer has not completed settlement within 31 days of the order of the bankruptcy court, buyer hereby agrees to be subject to claims by the estate for all additional costs, interest expenses, taxes and all other expenses related to the proposed transaction and the property, which sums shall be added to the sale price and shall be due at settlement.

   d. Where buyer has not completed settlement within 61 days of the order of the bankruptcy court, buyer hereby agrees that the deposit amount shall be considered as liquidated damages and shall remain property of the estate, and buyer shall have no right or claim of credit, redemption or return. The estate retains all rights and recourse against buyer in the event of a buyer default.

   e. Closing shall be held at the Trustee's office.

   f. The terms **"Closing"** and **"Closing Date"** or words of similar import, whenever used herein, shall mean such place, date and time or the place, date and time designated by Seller on which the deed to the Business Assets shall be delivered to Buyer.

4. **APPORTIONMENTS**

   The following charges shall be apportioned as follows:

   a. **Real Estate Taxes and Closing Costs.** The sale is subject to any taxes as levied and assessed, water and sewer rents, if any, together with any other lienable municipal or county services or taxes as of the date of closing ("Tax Liens").



    b. **Utility Charges.** The sale is subject to any and all utilities.

C **Transfer Taxes.** All transfer taxes imposed by any governmental body shall be paid by the Buyer.

d. **Recording Fees.** Buyer shall pay all recording fees for the Deed and any fees incurred as a result of any mortgage or deed of trust, and any premiums for mortgage title insurance insuring a mortgagee, as holder of any mortgage delivered as a result of this transaction and the fees of any of Buyer's attorneys for the review and preparation of documents associated with Buyer's closing.

**5. ZONING, PERMITS AND CONSTRUCTION**

To the extent assignable, Seller shall assign Seller's rights to any and all permits and licenses, if any, relating to the Business Assets and shall deliver all estimates and proposals received relating to the Business Assets.

6. **TITLE AND COSTS**

a. The Business Assets is to be purchased by Buyer, free and clear of all liens, encumbrances, interests and easements, pursuant to an order of the Bankruptcy Court obtained under Section 363 of the Bankruptcy Code, Title 11, USC, excepting, however, b. and c. below and the following: existing building restrictions; ordinances; easements of roads; privileges; or right of public service companies, if any; agreements or like matters of record; or easements or restrictions visible upon the ground.

b. In the event that the Business Assets are subject to a lien of the Lender, title shall be delivered by a trustee's deed free and clear of liens, claims and encumbrances junior to the Lender pursuant to section 363 of the bankruptcy code with any junior liens, claims or encumbrances attaching to the proceeds of the sale.

c. Otherwise, title shall be delivered by a trustee's deed free and clear of liens, claims and encumbrances junior to Tax Liens pursuant to section 363 of the bankruptcy code with any junior liens, claims or encumbrances attaching to the proceeds of the sale.

d. Other than liens and claims of the Lender or Tax Liens, the Buyer shall provide the trustee with a title report listing which liens, claims, encumbrances, or interests that the Buyer seeks to purchase free and clear



of. If no such report is provided prior to the entry of the order approving the sale, Buyer agrees to accept the proposed form of order filed with the court by the Trustee and issued by the court pursuant to section 363 of the bankruptcy code.

**7. <u>FIXTURES, TREES, SHRUBBERIES, ETC.</u>**

Any and all fixtures and improvements attached to any building on the Business Assets on the date hereof and any improvements to the land existing on such date, are included in this sale including, without limitation, any and all plumbing, lighting fixtures, and systems appurtenant thereto, and forming a part thereof, as well as all other permanent fixtures, if any, together with all trees, shrubberies and plants now on the Business Assets, are intended to be conveyed herein and shall become the property of the Buyer at the time of Closing.

**8. <u>CONVEYANCE</u>**

At the Closing, Seller shall deliver to Buyer the following:

**a.** **<u>Deed</u>.** Bankruptcy Court Order transferring the Business Assets free and clear as well as Fee Simple Trustee Deed, pursuant to an order of the Bankruptcy Court, free and clear of all liens, claims, interests and encumbrances of any type whatsoever, except as set forth herein and may otherwise be agreed in writing by Seller and Buyer prior to Closing.

**b.** **<u>Keys</u>.** All keys to any buildings or other improvements (if any) located at or on the Property, in possession of Trustee.

**c.** **<u>Other Documents</u>.** Such other documents and instruments as may be reasonably required to close the transactions contemplated by this Agreement.

9. **<u>RISK OF LOSS: INSURANCE</u>**

If, between the date of this Agreement and the Closing, the property shall be damaged by fire or other casualty, the following shall apply:

a. The risk of loss to the Property by fire or other casualty until the Closing is assumed by Buyer without any obligations or liability by Seller to repair or restore the Business Assets.



## 10. NO REPRESENTATION

a. Buyer acknowledges and agrees that Seller has not made and Buyer has not relied upon any representation or warranty, whether implied, presumed or expressly provided in law or otherwise, arising by virtue of any statute, common law or other legally binding right or remedy of Buyer, except as expressly set forth herein. Buyer further acknowledges and agrees that Seller is not under any duty to make inquiry regarding any matter that may or may not be known to Seller.

b. Accordingly, Buyer agrees to accept the Business Assets on the Closing Date in an "as-is" and "where-is" condition subject to all violations as of the date of execution of this Agreement. Buyer, for itself, and for all parties claiming through, by or under Buyer, fully and irrevocably release Seller and its agents and representatives from any and all claims that it may now have or hereafter may acquire against Seller, its heirs, executors, administrators, assigns or personal representatives, for any cost, loss, liability, damage, expense, action, whether foreseen or unforeseen, arising from or related in any way to any defects, errors or omissions in and related to the Business Assets.

c. Buyer further acknowledges that this release shall be given full force and effect according to each of its expressed terms and provisions, including but not limited to those relating to unknown and suspected claims, damages and causes of action. This Section shall survive Closing, or, if Closing shall not occur, shall survive the termination or cancellation of this Agreement.

d. Buyer agrees that the trustee and his agents have communicated no specific knowledge of the Business Assets' condition, use or usability and that the buyer has not relied on any such communications in making decisions related to the property. The buyer has undertaken independent investigations and is satisfied as to all aspects of the Business Assets' condition, use, and usability, vacancy or not, right of occupancy, or any other condition or right and further agrees that:

- There is no warranty on the Business Assets. The Business Assets and any improvements and or specified contents thereto are sold as is, without any warranty, implied or expressed as to condition, use, usability, vacancy or not, right of occupancy, or any other condition or right.

- The Business Assets and any improvements or specified contents are sold by the trustee, **as is, where is,** without any representations or warrantees whatsoever, and the buyer agrees to accept the property as is, subject to



normal wear and tear, including moving wear and tear, and/or clean out expense.

- The buyer recognizes and accepts that this Business Assets is being sold in a bankruptcy estate sale and as such the trustee is not obligated to provide a broom clean or vacant property.

- The buyer recognizes and accepts that as estate property, prior to or at settlement the Business Assets may contain items of personal property of tenants or of others and absent a specific listing of items in the agreement of sale, no personal property is conveyed.

**11. <u>ENTRY UPON THE PROPERTY</u>**

a. Buyer and Buyer's agents, representatives, appraisers, mortgage company representative, engineers, inspectors and other persons designated by the Buyer shall have the right with reasonable notice to Sellers, from time to time, at reasonable times prior to settlement, to inspect the Business Assets.

b. Buyer understands and agrees that any inspection of the Business Assets is at Buyer's own risk and expense.

c. Seller shall also provide access to the Business Assets at all reasonable times, upon the prior request of Buyer to Buyer, his agents, employees, contractors and licensees, and such other persons as Buyer shall reasonably wish to have access to the Property, for the purpose of making inspections, conducting tests and performing such other tasks as are necessary to satisfy the conditions set forth in this Agreement.

d. Buyer shall indemnify and hold Seller harmless from and against any costs, losses, damages, expenses or liabilities incurred by Seller as a result of Buyer's use of the access rights provided under this section.

**12. <u>NO BROKER</u>**

a. Buyer and Seller each represent that this sale was not brought about by or with the assistance of any broker or person acting as such and no such person was consulted or dealt with by Buyer in connection with Buyer's purchasing

        or had any part in interesting Buyer in purchasing the Business Assets.

b. Neither Buyer nor Seller has authorized any person or entity to act as a broker, finder or in any other similar capacity in connection with the transactions contemplated in this Agreement and the negotiations leading to it in such manner as to give rise to a valid claim against the Seller or the Buyer for any broker's or finder's fee or similar compensation.

c. Each party shall indemnify and hold the other harmless in the case of a breach of the foregoing, caused by any such party.

**13. BUYER'S DEFAULT**

If Buyer shall fail to cure a default, without notice, in the performance of any of the terms, obligations and agreements on Buyer's part to be observed or performed hereunder, at or prior to settlement, then all deposit monies, and all other sums which have been paid by Buyer hereunder, together with accrued interest earned thereon, if any, shall be retained by the Sellers as liquidated damages for such breach. In that event, Buyer shall be released from all further liability or obligation hereunder and this Agreement shall be null and void.

**14. MODIFICATION**

This Agreement may not be modified or terminated orally, and no modifications, terminations, or attempted waivers shall be valid or enforceable unless in writing signed by the person against whom the same is sought to be enforced.

**15. INTERPRETATION**

This Agreement shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania. Any litigation that may be commenced pursuant to this Agreement shall be commenced in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**16. NOTICES**

All notices and other documentation required to be given under the terms of this Agreement, shall be given by certified mail to the following:

TO SELLER: Lewis M. Irving

c/o Gary F. Seitz, Trustee
1628 John F. Kennedy Blvd
Suite 1901
Philadelphia, PA 19103
gseitz@gsbblaw.com



TO BUYER: Haven Memorial Park Cemetery and Crematorium, Inc.

c/o Thomas S. McNamara, Esq.
Indik, McNamara & Dallarda, P.C.
123 South Broad Street, Suite 2230
Philadelphia, PA 19109
tmcnamara@imdlaw.com

17. **ASSIGNMENT**

Buyer shall have the unrestricted right to assign Buyer's interest or any part of Buyer's interest in this Agreement to an entity owned or controlled by Buyer without prior approval of the Seller. Any such assignment shall not relieve Buyer of its obligations as set forth herein.

18. **CAPTIONS**

The captions contained herein are inserted only for the purpose of convenience reference and in no way define, limit or describe the scope or intent of the Agreement of Sale or any part thereof.

19. **SELLER'S DEFAULT**

In the event this Agreement is not approved by the bankruptcy court or Seller withdraws from this Agreement or fails to make Closing to Buyer herein, or in the event of any breach or default of this Agreement by Seller which prevents the Closing from taking place, it is expressly understood and agreed that Buyer shall have the privilege of terminating this Agreement for cause and receiving a refund of all funds deposited by Buyer with Seller.

**IN WITNESS WHEREOF,** and intending to be legally bound, the parties hereto set their hands and seals on the date first above written.

**LEWIS M. IRVING, DEBTOR, SELLER**

______________________________

**By: Gary F. Seitz, Esquire, His Chapter 7 Trustee**
**USBC EDPA BANKRUPTCY NO.: 19-13930-AMC**

**Date:** September 2, 2021

**HAVEN MEMORIAL PARK CEMETERY AND CREMATORIUM, INC., BUYER**

**By:** /s/    email authority

**Date:** 9/2/2021